## TENNESSEE VALLEY AUTHORITY et al. v. ASHWANDER et al.*

## ASHWANDER et al. v. TENNESSEE VALLEY AUTHORITY et al.
### Nos. 7764, 7812.

Circuit Court of Appeals, Fifth Circuit.
July 17, 1935.

*Writ of certiorari granted 56 S. Ct. 145, 80 L. Ed. ——.

See, also, 9 F. Supp. 800.

No. 7764: James Lawrence Fly, Gen. Sol., Tennessee Valley Authority, and William C. Fitts, Jr., both of Knoxville, Tenn., John Lord O'Brian, of Buffalo, N. Y., and Wm. H. Mitchell, of Florence, Ala., for appellants.

Forney Johnston and Jos. F. Johnston, both of Birmingham, Ala., for appellees.

No. 7812: Forney Johnston, of Birmingham, Ala., for cross-appellants.

James Lawrence Fly, Gen. Sol., Tennessee Valley Authority, and William C. Fitts, Jr., both of Knoxville, Tenn., John Lord O'Brian, of Buffalo, N. Y., Wm. H. Mitchell, of Florence, Ala., John E. Delony, Jr., of Tuscumbia, Ala., Perry W. Turner, C. A. Bingham, J. T. Stokely, and W. Logan Martin, all of Birmingham, Ala., and Courtland Palmer, of New York City, for cross-appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

By contract dated January 4, 1934, the Alabama Power Company, a corporation engaged in the manufacture, transmission, and distribution of electricity, agreed to sell such of its transmission lines as extend from Wilson Dam at the Muscle Shoals plant in Alabama into seven Alabama counties, to the Tennessee Valley Authority (TVA), a corporate agency of the United States, created by the Act of Congress of May 18, 1933, 48 Stat. 58, 16 USCA § 831 et seq. The TVA agreed to pay the purchase price of $1,-150,000 upon delivery. The Alabama Power Company further agreed that it would offer its distribution systems within the territory above named for sale to the respective municipalities in which such systems are located at prices which it was willing to accept; and that it would cooperate with the Electric Home & Farm Authority (EHFA), a government corporate agency created to finance sales of electrical appliances, in the sale of such appliances. The TVA, after waiting three months for the negotiation and consummation of sales of the urban distribution systems, was to have the right to furnish electric power to any and all such systems regardless of whether the Alabama Power Company had sold them to the municipalities. On May 21, 1934, the Alabama Power Company entered into an agreement with EHFA to act as the latter's agent in the collection of installments due on the purchase price of electrical appliances sold by retailers to individual customers. On August 9, 1934, the Alabama Power Company, not having sold any of its distribution systems to the municipalities, granted to TVA an option to purchase them; but on January 25, 1935, after this suit was filed, TVA gave notice that it had elected not to exercise that option.

On September 13, 1934, this suit to enjoin performance of the above-mentioned contracts was brought by a minority of the preferred stockholders of the Alabama Power Company, after they had formally but unsuccessfully demanded that the company itself institute suit to rescind those contracts.

The decree of the District Court, entered after final hearing, adjudged the contracts of January 4 and May 21 to be in furtherance of illegal proprietary operations by TVA, and ordered them annulled. It enjoined seventeen municipal defendants, which were under contract to receive electric power from TVA for use in the area served by the Alabama Power Company, from accepting or expending federal funds for the construction of city electric light plants, holding that these contracts were entered into in aid of TVA's illegal proprietary operations; and further enjoined them and the remaining municipal defendant, the city of Athens, which owns its distribution system, from purchasing electric power from TVA, on the ground that TVA was engaged in illegal competition with the Alabama Power Company. The TVA, EHFA, and city of Florence appeal from the decree. The plaintiffs below have taken a cross-appeal, contending that the decree should have included a declaratory judgment in order to prevent TVA from attempting to renew the option contract of August 9, which it is said was not exercised because of the pendency of this suit, or from engaging in divers other illegal operations not specifically enjoined.

The district judge made the following, among other, findings of fact: The United States acquired the Muscle Shoals property on the Tennessee river and built thereon Wilson Dam, an auxiliary steam plant, and two nitrate plants, for war purposes. The existence of these facilities for the manufacture of war materials constitutes a valuable national asset. Wilson Dam unaided by other power development, with its eight hydro-electric generators installed by the War Department, is capable of producing 50,000 kilowatts continuously, except during low stages of water; and the steam plant has a continuous capacity of 60,000 kilowatts. In 1934, 68 per cent. of the power generated at Wilson Dam was used for governmental purposes. Other dams under construction, which like Wilson are of the high-dam type, are, upstream, the Norris and the Wheeler; and, downstream, the Pickwick. The release of waters from Norris Dam will increase the continuous capacity of Wilson Dam by 40,000 kilowatts, and Norris Dam itself, if generators are installed, is capable of producing 73,000 kilowatts. If the Wheeler and the Pickwick Dams are used only as reservoirs, according to present plans, the total continuous capacity of Wilson and Norris Dams in combination, without the aid of the steam plant, will be 202,000 kilowatts. The construction of Wilson Dam also provides a depth of 9 feet of slack water over the Muscle Shoals rapids, thereby eliminating a serious obstruction to navigation. Navigation will be further improved by the completion of Wheeler and Pickwick Dams. Storage of water by means of reservoirs is essential to adequate flood control on the Tennessee river. Wilson Dam was completed in 1925 at a cost of $50,000,000. It probably is not capable of producing more water power than would be needed for the national defense in time of war, but in time of peace the power it makes available is so much in excess of the government's needs for it for national defense and for navigation that, without the installation of any other dam, there is a surplus even after supplying the transmission lines which TVA agreed to purchase from the Alabama Power Company. There has been no sale or contract for sale of the remaining surplus. The sale of electric energy generated at Muscle Shoals in excess of that required for operating the locks and servicing government properties can be made to produce profits which could be applied toward the reimbursement of the cost of Wilson Dam, or expended in the construction of new dams. It is not the purpose of TVA to limit the production of electric power to that needed by the government in manufacturing war materials and providing for navigation, but its declared policy is to utilize to the fullest extent possible all the electric energy which the Wilson and other dams are capable of producing, by supplying first governmental needs, and then by selling the surplus to users of electricity, in competition with public utility corporations engaged in the manufacture, transmission, and distribution of electricity. In disposing of surplus power TVA intends to ob-

tain revenue, but at the same time to undersell its private competitors in order to establish a "power yardstick" and to demonstrate the advantages of public over private ownership of electric light plants. Upon these findings of fact, which may safely be assumed to be correct since none of them is challenged, the district judge concluded as a matter of law that the Congress has no constitutional power to confer upon TVA, or any federal agency, the right to enter into such a contract as that of January 4, and that the contract of January 4, since it was void as to TVA, was void as to the Alabama Power Company. The district judge, having reached this conclusion, consistently held that the dependent contract of May 21 was also void. The plaintiff stockholders may be dismissed from further consideration, inasmuch as they are entitled to assert only the rights of the Alabama Power Company; and so we need to consider only the effect of the principal contract of January 4 upon the rights of the contracting parties. The district judge, having held that TVA was assuming to exercise authority which no act of Congress could constitutionally confer upon it, did not pass upon the contention made on behalf of the Alabama Power Company that the TVA Act of 1933 was invalid on the ground that it purports to delegate legislative authority. It was the view of the district judge that TVA, while it had the implied right to dispose of any surplus electric power unintentionally created in the exercise of a bona fide effort to make such power only as was needed for the manufacture of war materials and for serving the necessities of navigation, had and could have no constitutional authority intentionally to create and sell any additional surplus. He therefore enjoined further performance of the contract of January 4, not for any inherent infirmity, such as fraud, duress, or inadequate consideration, but solely because he was convinced that the program of TVA for the manufacture and disposal of surplus electric power bore no substantial relation to any lawful governmental function. It is the contention of TVA that as an agency of the United States it has the constitutional right and statutory authority to dispose of all the electric power, in excess of such of it as may be needed from time to time for the production of war materials and for purposes of navigation, that the Wilson Dam operated to its full capacity can be made to produce.

 Wilson Dam is the property of the United States. It was constructed by authority of section 124 of the National Defense Act of 1916, 39 Stat. 215 (50 USCA § 79), for the purposes of supplying water power for the production of munitions of war and improving navigation on the Tennessee river. The right to erect and maintain it, in the exercise by Congress of the war and commerce powers conferred upon it by the Constitution, is so clear that it is conceded. The government by virtue of its lawful ownership of Wilson Dam owns also the water power inevitably created by the construction of that dam. · Kaukauna Co. v. Green Bay, etc., Co., 142 U. S. 254, 12 S. Ct. 173, 35 L. Ed. 1004; Green Bay, etc., Co. v. Patten Paper Co., 172 U. S. 58, 19 S. Ct. 97, 43 L. Ed. 364; United States v. Chandler-Dunbar Co., 229 U. S. 53, 33 S. Ct. 667, 57 L. Ed. 1063. Congress, in the exercise of its power, under article 4, § 3, cl. 2, of the Constitution, to dispose of property belonging to the United States, may dispose of water power created at Wilson Dam as freely as it may of any other government property. It never heretofore has been held that the right of disposal exists only as to such part as is accidentally produced in excess of the amount strictly necessary for purposes of national defense or of navigation; but always that right has been supposed to extend to all the excess or surplus. Water power is property sui generis; unlike most other forms of property it cannot be put away and kept for future use or sale, but it must be either converted into electricity and used up as it is released from storage or allowed to go to waste. If the water stored at Wilson Dam is permitted to pass through the penstocks, in the language of counsel for TVA, "there is gold in it," but if allowed to flow unhindered over the dam, "it is forever gone." As a practical matter, there would be no market for the incidental or accidental surplus created in the honest effort to produce only enough electricity to supply strictly governmental requirements; for no user, public or private, of electricity would become a customer unless assurance could be given of a firm and dependable supply. That the surplus or any of it need not be allowed to go to

waste, but that it and all of it may rightfully be disposed of and the proceeds applied toward reimbursement of the cost of a publicly-owned dam is well settled. Kaukauna Co. v. Green Bay, etc., Co., supra; United States v. Chandler-Dunbar Co., supra; State of Arizona v. California, 283 U. S. 423, 51 S. Ct. 522, 75 L. Ed. 1154. In the last-cited case in 283 U. S. 423, at page 455, 51 S. Ct. 522, 526, it is said: "As the river is navigable and the means which the act provides are not unrelated to the control of navigation, * * * the erection and maintenance of such dam and reservoir are clearly within the powers conferred upon Congress." And so here, in our opinion it cannot successfully be maintained that there is no reasonable or substantial relation between the production and disposal of the surplus hydro-electric power available at Wilson Dam and the exercise of the war and commerce powers conferred upon Congress. It is within the province of Congress to adopt any reasonable means, whether of lease or sale, for disposing of the surplus. The use of transmission lines to facilitate sales cannot fairly be said by the courts to be unreasonable or inappropriate. Of course, it is true that the government of the United States cannot engage at will in private business, but it by no means follows that it cannot sell property which it owns, even though in doing so it may enter into competition with other public or private owners of property. It is not doubted that each of the several states holds in perpetual public trust dominion over the navigable waterways within its borders; but it is equally true that the rights of the states in navigable waters are subject to the supreme war and commerce powers of the general government. We live under a dual government of divided powers, not under two separate governments of conflicting powers. The power over navigable waters granted to the federal government is not in conflict with, but is necessarily superior to the dominion over such waters which the states reserved to themselves. Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23. It leads nowhere to say that the federal government in exercising its constitutional powers acts within "state domain," since at the same time it is acting within its own domain as well. We conclude that the decree below cannot be sustained on the theory of a lack of constitutional power.

The inquiry remains whether the necessary statutory power has been conferred on the TVA. The Tennessee Valley Authority Act of 1933 was passed for the purposes, among others, "of maintaining and operating the properties now owned by the United States in the vicinity of Muscle Shoals, Alabama, in the interest of the national defense * * * to improve navigation in the Tennessee River and to control the destructive flood waters in the Tennessee River and Mississippi River Basins." Section 1, 16 USCA § 831. The act purports in separate sections to confer on TVA the power to construct dams, reservoirs, and transmission lines, to furnish nitrogen products for military purposes; to allot to the War Department the water power necessary to operate locks, lifts, or other facilities in aid of navigation, and to produce, distribute, and sell electric power, "as herein particularly specified." The "particular specifications" are to sell the surplus power not used in the operation of locks and other works to states, counties, municipalities, partnerships, or individuals. The act further provides for the construction of Norris Dam, and that the President may from time to time recommend to Congress such legislation as he deems proper for flood control, navigation purposes, generation of electric power consistent with flood control and navigation, the proper use of marginal lands, the proper method of reforestation in the drainage basin, and the economic and social well-being of the people living in the Tennessee River Basin. The right was reserved to the government, in case of war or national emergency declared by Congress, to take possession of all or any part of the property described or referred to in the act "for the purpose of manufacturing explosives or for other war purposes." Section 20, 16 USCA § 831s. The sections of the act are declared to be separable, to the end that the unconstitutionality of any one section may not affect the validity of any other.

The act is unobjectionable from a constitutional standpoint in so far as it undertakes to confer on TVA the power to take charge of and operate Wilson Dam, and to distribute and sell surplus electricity to municipalities as well as to utility companies. "And the fact that

purposes other than navigation [and national defense] will also be served could not invalidate the exercise of the authority conferred, even if those other purposes would not alone have justified an exercise of Congressional power." State of Arizona v. California, supra. It does not appear that TVA in respect of its operations at Wilson Dam is doing or proposes to do anything more than is authorized by the act. This being so, its motives are immaterial. The section of the act (section 23, 16 USCA § 831v) which provides that the President shall make recommendations to Congress as to the future policy of developing the Tennessee Valley is unobjectionable, as in any event the President may make such recommendations to Congress as he thinks proper. The act is not subject to the criticism that Congress has abandoned all purposes of navigation and national defense, since navigation is now being improved, and in the event of war the right is reserved to use the Muscle Shoals property exclusively for national defense.

■ The Rivers and Harbors Act of 1930, 46 Stat. 927, authorized a project for the permanent improvement of the main stream of the Tennessee river to a navigable depth of 9 feet in accordance with the recommendation of the Chief of Engineers in House Document No. 328, of the Seventy-first Congress, Second Session. Because there was no recommendation in that House document for high-type dams, or for their location, it is contended that the Tennessee Valley Authority Act undertakes to delegate legislative power with reference to the location and type of the Norris, Wheeler, and Pickwick Dams. As we have just seen, the act itself provides for the location of Norris Dam, but whether specifically enough as to type is as we think immaterial; for Wilson Dam alone, without any assistance from Norris, Wheeler, or Pickwick Dam, has a surplus after serving the transmission lines which it agreed to purchase from the Alabama Power Company. Besides, the Alabama Power Company has no standing to object even though these additional dams have not been properly authorized by Congress. Frothingham v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078. It is not a riparian owner, or the owner of a dam site which the government is assuming to take; nor has it any such special interest as would entitle it to object to proposed improvements in aid of the national defense or of navigation. United States v. Chandler-Dunbar Co., supra, 229 U. S. 53, at page 73, 33 S. Ct. 667, 57 L. Ed. 1063.

On the whole case, our conclusion is that the decree of the district judge was erroneous. We therefore have no occasion to consider whether the Alabama Power Company, if that decree had been affirmed, would have been entitled to a declaratory judgment.

Appellees take nothing by their cross-appeal. On the direct appeal the decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

SIBLEY, Circuit Judge (concurring).

The district judge also found that the TVA board had very far-reaching plans for social experimentation which he thought beyond the constitutional limits of the federal power. This case is not to be decided by the purposes and plans of the board, but by the validity of what is about to be done under the attacked contracts. The contracts deal only with surplus power arising at the Wilson Dam which may, as we hold, be disposed of by Congress. The manner of the disposal of public property and the extent to which it may be allowed to affect private business are within the discretion of Congress. An exercise of legislative discretion is reviewable at the ballot box rather than in the courts.