## GRANT v. TENNESSEE VALLEY AUTHORITY.

### No. 275.

District Court, E. D. Tennessee, S. D.

Dec. 31, 1942.

See, also, D.C., 44 F.Supp. 589.

Joe B. Roberts, of Chattanooga, Tenn., for plaintiff.

Wm. C. Fitts and Chas. J. McCarthy, both of Knoxville, Tenn., for defendant.

DARR, District Judge.

Under authority of Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the defendant asks for summary judgment asserting that there is no

issue as to any material fact. Supporting the motion, the defendant has filed affidavits. Counter affidavits are offered by the plaintiff.

The plaintiff seeks relief on three claims. The first is based on the charge that damages to crops were caused by flood waters which resulted from the negligence of the defendant's employees in the handling of the waters of the Tennessee River.

The second is for the same injuries and based on the allegations that damages had resulted from the defendant changing the natural flow of the River.

The third is based on the allegation that the flood waters were caused by the defendant undertaking to accumulate waters for the sole purpose of generating electric energy in violation of its statutory authority.[1]

The defendant is a corporation, an instrumentality of the United States, created to develop and maintain by a number of dams on the Tennessee River and its tributaries a system of navigation and flood control and, so far as consistent therewith, to generate electric energy at such dams for certain usages and to sell the surplus power. Tennessee Valley Authority Act codified at 16 U.S.C.A. § 831 et seq.

A part of the charter grants of the defendant is that it: "May sue and be sued in its corporate name". No other textual provisions are made concerning permission to be sued.

The motion presents this question: To what extent did the Congress intend to permit suits against the defendant?

In a comparatively recent decision, announced since the government has extensively operated numerous functions by corporate instrumentalities, the Supreme Court, in a learned opinion by Mr. Justice Frankfurter, has carefully analyzed a proper method of construction of congressional intent to permit such corporation to be sued. Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 517, 83 L.Ed. 784.

One paragraph in this opinion is a guide in determining this question in accord with the law and public policy. This paragraph is as follows: "Therefore, the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work. United States v. Lee, 106 U.S. 196, 213, 221, 1 S.Ct. 240, 254, 261, 27 L.Ed. 171; Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corp., 258 U.S. 549, 567, 42 S.Ct. 386, 388, 66 L.Ed. 762. For more than a hundred years corporations have been used as agencies for doing work of the government. Congress may create them 'as appropriate means of executing the powers of government, as, for instance, * * * a railroad corporation for the purpose of promoting commerce among the states.' Luxton v. North River Bridge Co., 153 U.S. 525, 529, 14 S.Ct. 891, 892, 38 L.Ed. 808. But this would not confer on such corporations legal immunity even if the conventional to-sue-and-be-sued clause were omitted. In the context of modern thought and practice regarding the use of corporate facilities, *such a clause is not a ritualistic formula which alone can engender liability*[2] like unto indispensable words of early common law, such as 'warrantizo' or 'to A and his heirs', for which there were no substitutes and without which desired legal consequences could not be wrought. Littleton, Tenures (Wambaugh ed.) §§ 1, 733."

From this quotation and a review of the whole opinion, I am impressed with the idea that the inclusion of "the conventional to-sue-and-to-be-sued clause" in the Tennessee Valley Authority Act is not a shibboleth to engender liability generally, but is to be taken into consideration with the congressional purposes in creating this governmental corporation.

The Tennessee Valley Authority was created for the primary purposes "of promoting navigation and controlling floods". It is these purposes that give it constitutional existence. Tennessee Valley Authority Act as codified at 16 U.S.C.A. § 831h—1. Ashwander v. Tennessee Valley Authority, Ala., 1936, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688, affirming Tennessee Valley Authority v. Ashwander, 5 Cir., 78 F.2d 578, reversing Ashwander v. Tennessee Valley Authority, D.C., 9 F.Supp. 965, and certiorari granted 1935, 296 U.S. 562, 56 S.Ct. 145, 80 L.Ed. 396, rehearing denied 1936, 297 U.S. 728, 56 S.Ct. 588, 80 L.Ed. 1011, mandate conformed to D.C., 14 F.Supp. 11; Tennessee Electric Power Co. v. Tennessee Valley Authority, Tenn.

[1] The plaintiffs do not insist that the acts of the defendant amounted to a taking of property.

[2] My emphasis.

1939, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543, affirming D.C., 21 F.Supp. 947, and appeal was dismissed 1939, 305 U.S. 663, 59 S.Ct. 54, 83 L.Ed. 430, and appeal was dismissed 1939, 305 U.S. 665, 59 S.Ct. 154, 83 L.Ed. 431.

These purposes are wholly governmental functions entirely disassociated with any business in competition with private enterprises.

Because of the modern trend of governmental activities through corporate agencies in an endeavor to better economic conditions, there has resulted much commercial and competitive activities on the part of the government. Under such situations, the courts have very properly been liberal in construing various statutes as permitting suits to be brought against such corporations for wrongs both involving contracts and torts.

An example of this modern trend is the case of Keifer & Keifer v. Reconstruction Finance Corp., supra, and the case of Prato v. Home Owners' Loan Corporation, D.C., 106 F.2d 128.

But a different situation is presented where the governmental corporation is operated wholly and solely for governmental purposes that do not enter the fields of competitive ventures.

■ By a long line of cases it has definitely been settled that neither the government nor its instrumentalities would have to respond in damages arising in the development and maintenance of waters for purposes of navigation and flood control, including claims for negligence.[3] It may be noted that this position is not because of governmental immunity from suit but on the grounds of public policy.

In making this new arrangement for improvement of navigation and flood control (the navigation program being as old as the government itself), it is my idea that Congress had no intention of changing the law by permitting the government to be sued concerning such functions, despite the fact that there is included in the Act the to-sue-and-to-be-sued clause. If Congress had intended such a drastic change in long established public policy, it would have been more specific.

■■ But the functions of the defendant in the commercial field are entirely different. Upon principle and authority, it is quite clear that the government should respond in damages for wrongs committed when it is engaged in the same activities as its citizens. It is my judgment that Congress intended that the defendant can be sued for all wrongs committed for conduct pertaining to its generating, use and sale of electric energy made from the power created by its dams.

It follows that the motion for summary judgment should be sustained as to the first and second claims.

But the third claim undertakes to set up negligence by the defendant's manipulations of waters for the ultra vires purposes of generating electricity.

The Act gives the defendant wide discretion in its operations to improve navigation and flood control. If the defendant can be sued on the theory that it is manipulating the waters for generating electricity, then it would be exposed to much litigation and harassment. If it could be sued for damages, it might be enjoined.

It is my judgment that this situation is somewhat similar to that involved in the case of Standard Nut Margarine Co. v. Mellon, 63 App.D.C. 339, 72 F.2d 557, and that the same conclusions should be reached here.

■ I am strongly of the opinion that Congress did not intend that the defendant be liable in damages in connection with its handling and manipulating of the waters placed in its control. Any other idea would be quite contrary to public policy.

■ Be this as it may, and assuming that there is a right to sue on the third claim because it concerns the defendant's commercial activities, it is my judgment that the motion for summary judgment on this claim should be sustained. An attentive study of the supporting affidavits of the defendant and the counter affidavits of the plaintiffs convinced me that there is no material evidence to be submitted to a jury on the third claim.

■ To pass on all questions raised by the motion, I might add that the affidavits

---

[3] A splendid review and interpretation of a number of these cases by Judge John D. Martin may be found in the case of Franklin v. United States, D.C., 16 F. Supp. 253; also see Keokuk & Hamilton Bridge Co. v. United States, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165.

disclose without dispute that the plaintiffs' lands were overflowed to a lesser extent than they would have been had not this flood control program been maintained by the defendant. To say that the defendant was negligent in not reducing the overflow still further cannot be negligence but only a charge of failing to exercise proper discretion. The affidavits disclose that the plaintiffs were really benefited by the defendant's program rather than hurt. They can't be heard to claim that they might be benefited further if the defendant had done certain things.

It seems to me, assuming a right to sue on all claims, the affidavits conclusively show that there is no material issue of fact for a jury to pass upon.

The defendant's motion for a summary judgment is sustained. In all cases there will be a judgment for the defendant with all reasonable costs.

Order accordingly.