Georgia Ann ADAMS
v.
TENNESSEE VALLEY AUTHORITY.

Morgan H. CARTER et ux.
v.
TENNESSEE VALLEY AUTHORITY.

C. H. HUGHES et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Jack THOMPSON et ux.
v.
TENNESSEE VALLEY AUTHORITY.

John W. WILLIAMS
v.
TENNESSEE VALLEY AUTHORITY.

William E. BROWN et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Martha HUGHES
v.
TENNESSEE VALLEY AUTHORITY.

Bill C. BOWERS et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Charles F. CHANDLER
v.
TENNESSEE VALLEY AUTHORITY.

Rufus D. HUGHES et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Clarence E. MILLER et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Robert H. BERRY et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Lawrence W. MILLER et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Robert Bruce BIRDWHISTLE et ux.
v.
TENNESSEE VALLEY AUTHORITY.

W. C. WARD et ux.
v.
TENNESSEE VALLEY AUTHORITY.

Civ. A. Nos. 5385, 5428–5434, 5491, 5510, 5511, 5522, 5530, 5531 and 5553.

United States District Court
E. D. Tennessee, N. D.
Sept. 29, 1965.
Order April 26, 1966.

William R. Hurst, Knoxville, Tenn., for Charles F. Chandler.

James H. Jarvis, Ray L. Jenkins, Knoxville Tenn., for Rufus D. Hughes, et ux., Clarence E. Miller, et ux., W. C. Ward, et ux.

James H. Jarvis, Knoxville, Tenn., for Lawrence W. Miller, et ux., Robert Bruce Birdwhistle, et ux.

Norbert J. Slovis, Lockett, Slovis & Weaver, Ray L. Jenkins, Knoxville, Tenn., for Robert H. Berry, et ux.

Charles J. McCarthy, Thomas A. Pedersen, Jacob D. Vreeland, Beauchamp E. Brogan, Paul T. Dunn, Division of Law, Knoxville, Tenn., for T. V. A.

ROBERT L. TAYLOR, Chief Judge.

This action was started August 4, 1965 against the TVA in the Circuit Court of Anderson County, alleging that blasting in the early months of 1963 by the Authority in connection with the construction of its Bull Run Steam Plant had done great and permanent damage to plaintiff's dwelling house on nearby property.

On August 19, 1965 the Authority petitioned for removal of the cause to this Court, under 16 U.S.C. §§ 831–831dd, on the ground that it is an agency of the United States.

■ Thereafter on September 9, 1965, the Authority filed its motion to dismiss on the grounds: that the detonations by defendant were made in the course of a construction project of a federal agency authorized by federal statute and if there was damage, the law affords no remedy; and that there was no allegation of negligence and that defendant as an agency of the United States cannot be held liable in tort for the non-negligent conduct of an authorized activity.

Plaintiff responds that the motion should be dismissed, on the ground that the Authority is subject to the common law of Tennessee which requires no proof of negligence where defendant uses powerful explosives in a blasting operation which proximately injure and damage the property of a third party, and that the Tennessee law affords a remedy for direct and consequential damages from

Floyd H. Bowers, Clinton, Tenn., for Georgia Ann Adams.

James H. Jarvis, O'Neil, Jarvis, Parker & Williamson, Jenkins & Jenkins, Knoxville, Tenn., for Morgan H. Carter, et ux.

James H. Jarvis, Jenkins & Jenkins, Knoxville, Tenn., for C. H. Hughes, et ux., John W. Williams, William E. Brown, et ux., Martha Hughes, Bill C. Bowers, et ux.

the use of high explosives. This is true whether there is physical invasion of the adjoining property. Liability may be based upon concussion and vibration of the earth and air. Aycock v. Nashville, C. & St. L. Ry. Co., 4 Tenn.App. 655. In Pate v. Lewisburg & Northern Ry. Co., 8 Tenn. CCA (Higgins) 355, it is said that plaintiff need not prove the blasting was done in a negligent manner. City of Knoxville v. Peebles, et ux., 19 Tenn. App. 340, 87 S.W.2d 1022 supports both previous cases. See also, Jones v. Oman, 28 Tenn.App. 1, 184 S.W.2d 568.

But defendant argues: " * * * Defendant had a legal right to construct the Bull Run plant and in so doing to conduct any blasting operations it deemed necessary. It owed no duty to plaintiff to refrain from blasting or from using explosive charges of whatever size were most efficient and economical." It argues plaintiff "is simply complaining of a non-negligent invasion of her property arising out of the authorized construction of a public project * * *" and calls for application of Transportation Co. v. Chicago, 99 U.S. 635, 25 L.Ed. 336. It cited also Lynn v. United States, 110 F.2d 586 (C.A. 5) where there was damage from improvement of the river by the Wheeler reservoir. Other cases of like import dealt with the effects of flooding out crops, Atchley v. TVA, D.C., 69 F. Supp. 952; highway construction, Myers v. United States, 9 Cir., 323 F.2d 580; airports and avigation easements, Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585; a proving ground for munitions, Nunnally v. United States, 4 Cir., 239 F.2d 521; storage of munitions, Ferris v. Wilbur, 27 F.2d 262 (C.A. 4); and atomic detonations, Bartholomae Corp. v. United States, 253 F.2d 716, 73 A.L.R.2d 1293 (C.A. 9).

These cases do not deal with the problem presented by this case. They involved the effects of the performance of a governmental function upon nearby property. Pacific National Fire Ins. Co. v. TVA, 89 F.Supp. 978 (D.C.W.D.Va.) which involved damage to a house from shock set off in the construction of a dam is more nearly in point. In that case, Judge Barksdale held that the setting off of the explosive was in the performance of a discretionary governmental duty and even if there were abuse of discretion there would be no liability.

Judge Barksdale in his opinion cited Grant v. TVA, D.C., 49 F.Supp. 564, decided by Judge Darr in 1942. But it should be noted that in the Grant case the action was for damages to crops resulting from the accumulation of water for the sole purpose of generating electricity. Judge Darr distinguished damage from manipulation of water for navigation and flood control which, he noted, were the primary purposes for which the Authority was created and which he said were entirely disassociated from any business in competition with private enterprise. "But," he said, "the functions of the defendant in the commercial field are entirely different. Upon principle and authority, it is quite clear that the government should respond in damages for wrongs committed when it is engaged in the same activities as its citizens. It is my judgment that Congress intended that the defendant can be sued for all wrongs committed for conduct pertaining to its generating, use and sale of electric energy made from the power created by its dams."

The case at bar is much stronger than the Grant case in that the injuries complained of resulted from excavating for the foundations for a steam plant which had no connections with navigation or flood control.

■■ In the opinion of the Court, the determination as to the amount of explosives to use in the excavations for the Bull Run plant was not the kind of judgment protected by Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 and similar cases. See Coates v. United States, 8 Cir., 181 F.2d 816, 19 A.L.R.2d 840–846. This is a simple case for damages against the TVA which by statute may be sued in its corporate name. 16 U.S.C. § 831c(b). The Federal Tort Claims Act does not apply to

TVA, 28 U.S.C. § 2680(1); nor does the Court of Claims have jurisdiction in suits against, or founded on actions of, the Tennessee Valley Authority, 28 U.S.C. § 1491. A person entitled to the right to redress is limited by statute to a direct lawsuit. Whether there was negligence in the use of explosives, or damage on adjoining property from concussion or vibration of the earth and air depends upon the common law of the State of Tennessee and must be tested out in a proceeding such as this.

It is ordered that the motion of defendant to dismiss be, and same hereby is, denied.

### ORDER

In its motion for a judgment N.O.V. in these cases, counsel for the TVA points out that on the issue of liability the jury held that TVA caused the damages to plaintiffs' properties but that TVA was not guilty of any negligence which was the proximate cause of such damages.

It, therefore, argues that TVA cannot be liable without fault and states that the TVA can act only in a governmental capacity and never in a proprietary capacity. Be this as it may, it does not necessarily follow that the TVA may not be liable under 28 U.S.C. § 1346(b) even though it was not negligent. The pertinent portions of this section reads as follows:

"(b) Subject to the provisions of chapter 171 of this title, the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the *negligent or wrongful act or omission* of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

In the case of Dalehite v. United States, 346 U.S. 15, at page 45, 73 S.Ct.

956, at page 972, the Court discussed the meaning of the word "wrongful" within the context of the statute and had this to say:

"Petitioners rely on the word 'wrongful' though as showing that something in addition to negligence is covered. This argument, as we have pointed out, does not override the fact that the Act does require some brand of misfeasance or nonfeasance, and so could not extend to liability without fault; in addition, the legislative history of the word indicates clearly that it was not added to the jurisdictional grant with any overtones of the absolute liability theory. Rather, Committee discussion indicates that it had a much narrower inspiration: 'trespasses' which might not be considered strictly negligent hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 2690, 76th Cong., 3d Sess. 43–44. * * * "

Again, in Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065, in a case where the petitioners being Navajo Indians living in southeastern Utah, sued the United States under the Federal Tort Claims Act to recover for the confiscation and destruction by federal agents of their horses, which were grazing on public lands of the United States the trial court awarded a lump sum judgment to the petitioners. The case was reversed by the Court of Appeals on the question of the authority of the District Court to enter an injunction and the Court of Appeals was affirmed as to that, but the Supreme Court reversed and remanded the case to the District Court for an allotment of the $100,-000.00 lump sum to the various plaintiffs. The Supreme Court discussed the question whether there might be liability under the Federal Tort Claims Act for wrongful and tortious acts of its employees at page 180, 76 S.Ct. at page 751. Its discussion follows:

"But, having concluded that there was no statutory authority, we are faced with the question whether the Government is liable under the Federal

Tort Claims Act for wrongful and tortious acts of its employees committed in an attempt to enforce a federal statute which they administer. We believe there is such liability in the circumstances of this case.

"Section 1346(b) of Title 28, United States Code, 28 U.S.C.A. § 1346(b) authorizes suits against the Government for 'loss of property * * * caused by the negligent or wrongful act * * of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act * * * occurred.' It is clear that the federal agents here were acting within the scope of their employment under both state and federal law. Under the law of Utah an employer is liable to third persons for the willful torts of his employees if the acts are committed in furtherance of the employer's interests or if the use of force could have been contemplated in the employment. Cf. Barney v. Jewel Tea Co., 104 Utah 292, 139 P.2d 878. Both of these conditions obtained here. The federal agents were attempting to enforce the federal range law, and such enforcement must contemplate at least the force used in removal of stock from the range. The fact that the agents did not have actual authority for the procedure they employed does not affect liability. There is an area, albeit a narrow one, in which a government agent, like a private agent, can act beyond his actual authority and yet within the scope of his employment. We note also that § 1346(b) provides for liability for 'wrongful' as well as 'negligent' acts. In an earlier case the Court has pointed out that the addition of this word was intended to include situations like this involving ' "trespasses" which might not be considered strictly negligent.' Dalehite v. United States, 346 U.S. 15, 45 [73 S.Ct. 956, 972, 97 L.Ed. 1427].

"Nor does 28 U.S.C. § 2680 bar liability here. This section provides that:

'The provisions of this chapter and section 1346(b) of this title shall not apply to—

'(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'

"The first portion of section (a) cannot apply here, since the government agents were not exercising due care in their enforcement of the federal law. 'Due care' implies at least some minimal concern for the rights of others. Here, the agents proceeded with complete disregard for the property rights of the petitioners. Nor can the second portion of (a) exempt the Government from liability. We are here not concerned with any problem of a 'discretionary function' under the Act, see Dalehite v. United States, supra. These acts were wrongful trespasses not involving discretion on the part of the agents, and they do give rise to a claim compensable under the Federal Tort Claims Act."

■ Under the authority of these two cases, this Court is persuaded that under the circumstances of this case, the employees of the TVA in detonating blasts on adjoining property which caused the damages sustained by the various plaintiffs committed an act of misfeasance for which the TVA is liable even though there may not have been negligence on the part of these employees.

■ In any event, this Court is satisfied that the employees in detonating the explosives were not performing a discretionary act. Indian Towing Company,

Inc., et al. v. United States, 350 U.S. 61, 75, 76 S.Ct. 122, 100 L.Ed. 48; Rayonier, Inc. v. United States, 352 U.S. 315, 319, 77 S.Ct. 374, 1 L.Ed.2d 354.

Although, as the TVA has pointed out in its brief, it is not subject to suit under the Federal Tort Claims Act, the brief goes further and states that there can be no basis for thinking that Congress intended to apply a different rule to TVA than that applied to other governmental agencies under the Tort Claims Act. Therefore, liability of the TVA must stand or fall upon a construction of the Federal Tort Claims Act and not by application of the principle of the Dalehite case.

In the opinion of the Court, the acts of the employees were "wrongful" within the meaning of the Federal Tort Claims Act and the TVA is liable for their misfeasance.

It is ordered that the motion of the TVA for a judgment N.O.V. be, and the same hereby is, denied.