**Mrs. Peggy S. LATCH et al., Plaintiffs,**

v.

**TENNESSEE VALLEY AUTHORITY et al., Defendants.**

**No. EC 6992.**

United States District Court,
N. D. Mississippi, E. D.
May 12, 1970.

---

4. Federal Maritime Com'n v. Atlantic & Gulf/Panama Can. Zone, 241 F.Supp. 766, 781 (S.D.N.Y.1965).

Orma R. Smith, Jr., David L. Coleman, Corinth, Miss., for plaintiffs.

Thomas A. Pedersen, TVA, Knoxville, Tenn., James E. Price, Corinth, Miss., for ACE.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This action was brought under the Mississippi Wrongful Death Statute [1] by Mrs. Peggy S. Latch as widow of Jimmy Latch, and as guardian of Kimberly Dawn Latch, a minor daughter of decedent, against the Tennessee Valley Authority (TVA), Alcorn County Electric Power Association (ACE), and ABC Manufacturing Company (ABC). Both

---

1. Miss.Code Ann. § 1453.

plaintiffs and defendant ACE are citizens of Mississippi, TVA is a federally-created corporation wholly owned by the United States government and by statute has its principal place of business in Alabama,[2] and ABC (sued as a John Doe defendant) is the unknown manufacturer of the circuit breaker which plaintiffs allege was faulty and caused the death by electrocution of Jimmy Latch.

The original complaint stated this action was brought pursuant to 16 U.S.C. § 831c(b) et seq.[3] and 28 U.S.C. § 1346(b).[4] Defendant TVA moved the court to dismiss the action as to TVA on the ground that the complaint failed to state a claim upon which relief could be granted. Defendant ACE also moved the court to dismiss on the ground that there was no diversity between plaintiffs and ACE, all of whom are citizens of Mississippi.

Following the submission of briefs by counsel, oral argument on the motions was held, at which time the court informed plaintiffs' counsel that it did not have jurisdiction under the sections of the U.S.Code cited in plaintiffs' complaint, but plaintiffs were granted permission to amend their complaint to allege jurisdiction under 28 U.S.C. §§ 1331(a) and 1337,[5] as suggested by counsel for TVA. An order was later entered formally allowing said amendment, supplementary briefs were submitted on the question of jurisdiction over either or both defendants under §§ 1331 and 1337, and the case is now before the court for decision on defendants' motions.

Initially, it is clear that plaintiffs erred in seeking to subject TVA to federal court jurisdiction under 28 U.S.C. § 1346(b) (Fn. 4, supra). That statute, although located in the section of the Code conferring jurisdiction on the federal district courts, is actually part of the Federal Tort Claims act,[6] from whose operation TVA is wholly excluded by 28 U.S.C. § 2680 (l):

"§ 2680. Exceptions.

The provisions of this chapter and § 1346(b) of this title shall not apply to—* * * (l) Any claim arising from the activities of the Tennessee Valley Authority."

The other federal statute cited by plaintiffs, 16 U.S.C. § 831c(b), providing that TVA may sue and be sued in its

2. 16 U.S.C. § 831g(a):
"(a) The Corporation shall maintain its principal office in the immediate vicinity of Muscle Shoals, Alabama. The Corporation shall be held to be an inhabitant and resident of the northern judicial district of Alabama within the meaning of the laws of the United States relating to the venue of civil suits."

3. 16 U.S.C. § 831c:
"Except as otherwise specifically provided in this chapter, the Corporation [TVA]
"(b) May sue and be sued in its corporate name."

4. 28 U.S.C. § 1346(b):
"(b) Subject to the provisions of chapter 171 of this title, the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

5. 28 U.S.C. § 1331:
"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
28 U.S.C. § 1337:
"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

6. Act of August 1, 1947, ch. 446, 61 Stat. 722.

own name, does not create new rights or remedies for or against TVA, but merely creates in TVA the normal corporate power to bring and defend direct lawsuits based on existing rights and remedies. Clearly § 831c(b) relinquished any sovereign immunity which TVA might have had as a government agency or corporation for proprietary functions by rendering it liable to direct lawsuit like any other litigant. Such being the case, TVA was, before the enactment of the Federal Tort Claims Act, liable for its torts as to non-governmental acts relating to the distribution and sale of electric power.[7] The waiver of sovereign immunity therein contained was both unnecessary and inappropriate as to TVA. Without the benefit of Committee reports with respect to the exceptions contained in § 2680, it would appear to this court that TVA had a recognized "common law" liability for tort in the exercise of its several proprietary functions and that Congress was quite unwilling to subject TVA to tort liability for its far-ranging governmental activities in the fields of national defense, navigation and flood control, as coverage under the Federal Tort Claims Act would have done. It is to be noted that the complaint in the case at bar deals with TVA's activities in the distribution and sale of electric power, and, therefore, would involve a determination of tort liability, quite apart from the scope of the Federal Tort Claims Act, including its exceptions.

■ It also appears, although not urged by plaintiffs, this court might have diversity jurisdiction[8] as to TVA, since TVA is a federally-created corporation having by statute its principal place of business in Alabama (Fn. 2, supra), and plaintiffs are Mississippi citizens, and the amount in controversy,

$500,000, amply meets the $10,000 jurisdictional requirement. However, no diversity of citizenship exists between plaintiffs and defendant ACE, which is a Mississippi citizen. Plaintiffs having indicated an understandable desire to bring their claims against both defendants in a single suit in a federal court, we shall now consider whether this court has jurisdiction of both defendants under §§ 1331 and 1337.

■ Section 1331 states that federal district courts shall have original jurisdiction of all civil actions "arising under" the Constitution, laws or treaties of the United States. Section 1337 states that federal district courts shall have original jurisdiction of all civil actions "arising under any Act of Congress regulating commerce." Since the TVA Act is an Act of Congress regulating commerce, Ashwander v. TVA, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), and since this case does not arise under the Constitution or a treaty of the United States, it is clear that the basic question under both sections is the same: Does a suit against TVA "arise under" an Act of Congress?

■ We note at the outset that this court is here concerned only with whether it has *original* jurisdiction of both defendants, and not whether it would have had removal jurisdiction of both defendants if the case had first been brought in state court, as plaintiffs suggest in their brief. Removal jurisdiction is a discrete statutory jurisdiction which is in some ways broader and in some ways narrower than original jurisdiction, and it is well established that the mere existence of removal jurisdiction under a special statute does not of itself permit a federal district court to exercise original jurisdiction.[9] Notwithstanding that this

7. Fowler v. TVA, 321 F.2d 566 (6 Cir. 1966); Adams v. TVA, 254 F.Supp. 78 (D.C.Tenn.1966); Grant v. TVA, 49 F. Supp. 564, 566 (D.C.Tenn.1942).

8. 28 U.S.C. § 1332(a).

9. Wright, Law of Federal Courts, ch. 6, p. 133 (1970 ed.); Viles v. Symes, 129 F.2d 828 (10 Cir. 1942); Mathers & Mathers v. Urschel, 74 F.2d 591 (10 Cir. 1935); Martin v. Wyzanski, 262 F.Supp. 925 (D.C.Mass.1967); Keppleman v. Up-

rule could result in the seemingly inefficient and illogical dismissal of a suit originally brought in federal court, its re-filing in state court, and its subsequent successful removal to federal court, it is a well-settled principle of federal jurisdiction. Moreover, it is uncertain whether all defendants would seek to remove if the case were brought in state court, so consideration of this court's possible removal jurisdiction at this time would be speculative.

█ The Supreme Court held in Pacific Railroad Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), that federal district courts have original jurisdiction of all suits by or against corporations created by federal statutes on the theory that all cases in which such corporations are involved "arise under" Acts of Congress. The Court stated that it was basing its decision on Chief Justice Marshall's opinion in Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204 (1824). As Chief Justice Waite correctly pointed out in his dissent in the *Railroad* cases, however, Justice Marshall in *Osborn* was construing the Constitution as to what jurisdiction Congress *could* give the federal courts over federally-created corporations, and not what jurisdiction the Act of Congress (now § 1331) actually *did* give the federal courts, which was not necessarily *all* the jurisdiction which Marshall had found Congress could have given. This criticism of the Court's reasoning, coupled with subsequent federal court congestion caused by the large number of suits involving federally-created corporations, led to the enactment in 1925 of a statute, now 28 U.S.C. § 1349,[10] denying to federal courts origi-

nal jurisdiction of actions involving federally-created corporations except where the United States owns more than one-half of the capital stock. As Mr. Justice Cardozo stated in Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L. Ed. 70 (1936), cited by ACE:

"Modern statutes have greatly diminished the importance of those decisions (*Railroad Removal Cases*) by narrowing their scope. * * * Federal incorporation is now abolished as a ground of federal jurisdiction except where the United States holds more than one-half the stock."

In spite of frequent judicial disapproval and criticism, however, federal courts still have original jurisdiction of all cases involving federally-created corporations where the United States owns more than half the capital stock, as is the case with TVA.[11] This is true even though no construction of the Act of Congress under which the action arises is in question. As in diversity cases, it is the nature of the parties which gives federal court jurisdiction and not the nature of the legal question involved, as in the ordinary "federal question" case arising under the Constitution or an Act of Congress.

Having determined that this court has jurisdiction of plaintiffs' claim against TVA, we now seek to determine whether it has jurisdiction over ACE as well. As plaintiffs candidly admit in their supplemental brief, any jurisdiction this court might have over ACE depends upon its original jurisdiction over TVA. As Professor Moore has stated:

"Unless the doctrine of pendent jurisdiction is applicable, jurisdiction over a claim against one defendant by

ston, 84 F.Supp. 478 (D.C.Cal.1949); Pendleton v. Bussey, 30 F.Supp. 211 (D.C.Va.1939).

10. 28 U.S.C. § 1349:

"The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the

United States is the owner of more than one-half of its capital stock."

11. See annotation, 14 A.L.R.2d 992 at 1017–1021, which cites Grant v. TVA, supra, Fn. 7. TVA is "a wholly owned corporate agency and instrumentality of the United States". United States v. An Easement and Right of Way, etc., 246 F. Supp. 263, 269 (W.D.Ky.1965), citing many cases; 16 U.S.C. § 831–831dd.

virtue of a federal matter will not support jurisdiction over a separate claim against another defendant, and in the absence of diversity or alienage and the requisite jurisdictional amount the non-federal claim must be dismissed." [12]

Plaintiffs contend, in essence, that this action against TVA and ACE is "non-separable" and "joint", and that its federal character, based on the federal nature of TVA, permeates the whole case. TVA in its letter-brief of March 26, 1970, agrees with plaintiffs, quoting from Matter of Dunn, 212 U.S. 374, 29 S.Ct. 299, 53 L.Ed. 558 (1908), as follows:

> "The plaintiffs themselves have made the act of which they complain a joint one, and, being one which arises under the Constitution and laws of the United States as to one of the defendants, it becomes so as to all, because it is joint. The Federal character permeates the whole case  *  *  *."

ACE replies to this contention in its brief with an excellent discussion of the landmark decision of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), and subsequent cases which treated the "joint" rule of *Matter of Dunn*, supra, as a legal anachronism, and created the concept of "pendent" jurisdiction. Plaintiffs agree as to the nomenclature, but argue that, since the reasoning of *Matter of Dunn* is still valid, the entire lawsuit should be heard at one trial in federal court by application of the doctrine of pendent jurisdiction. The modern view, replies ACE, is that if the complaint states two causes of action, one against TVA for its acts of negligence and one against ACE for its separate acts of negligence, these are separate causes of action and the doctrine of pendent jurisdiction is inapplicable to separate causes of action against separate defendants, citing the line of cases annotated at 5 A.L.R.3d 1071.

As originally stated in *Hurn*, pendent jurisdiction exists where a plaintiff sues a defendant on "two distinct grounds", one state and one federal "in support of a single cause of action". In such case, the *Hurn* court held, a federal court, as a matter of procedural convenience, may exercise jurisdiction of both the state and the federal "grounds". (289 U.S. at 246, 53 S.Ct. 586). The unfortunate choice of the vague term "cause of action" in *Hurn* has resulted in considerable confusion as to when federal courts should exercise pendent jurisdiction. Without wading the dangerous waters of what constitutes a "cause of action", we note that ever since *Hurn* was decided, federal courts have generally interpreted the pendent jurisdiction concept as applying only when both the state and federal claims are brought by a single plaintiff against a single defendant.[13] After many years of conflict and confusion of the pendent jurisdiction doctrine, the Supreme Court met the problem head-on in the case of United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In that case Gibbs, an employee who was fired from his job following a union-employer dispute, sued the Union alleging violations of federal law under the Taft-Hartley Act and state law under a state statute forbidding conspiracies to interfere with employment contracts. In deciding whether his state claim would be "pendent" to his federal claim, the court noted that the "cause of action" concept had been the source of considerable, needless confusion, and that it had caused the application of the pendent jurisdiction concept in lower federal courts to be "unnecessarily grudging". (383 U.S. at 725, 86 S.Ct. 1130). In holding that the lower court in *Gibbs* did have pendent jurisdiction, the Supreme Court re-defined that term, eschewing the words "cause of action", simply stating that pendent jurisdiction of a state claim exists whenever the state and federal claims "derive from a

---

12. Moore's Federal Practice, § 20.07(1).

13. Wright, supra, at p. 65.

common nucleus of operative fact" and "are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." (383 U.S. at 725, 86 S.Ct. at 1138). It is true that in the case at bar a single accident occurred in which plaintiffs' decedent was electrocuted by touching an electrically-charged wire. Plaintiffs now seek to recover from the parties allegedly responsible for the condition of that wire and the circuit breakers which controlled the electric current in it; and although plaintiffs posit more than one theory of recovery, the nucleus of operative fact out of which plaintiffs' claims arise may be regarded as a single occurrence, the electrocution of plaintiffs' decedent.

■ ACE contends that in spite of the single factual occurrence, courts have always held that for pendent jurisdiction to attach, the federal and state claims must be between a single plaintiff and a single defendant, and that pendent jurisdiction does not permit bringing in an additional party to respond to a state claim on the ground that the state claim is closely related factually to the federal claim against an existing party.[14] The Fifth Circuit has, relying on Hurn v. Oursler, supra, also so held, and at least one district court in this Circuit has so held as recently as 1966.[15] The court notes, however, that those cases were all decided *before* the Supreme Court decision in Gibbs, which approved and broadened the concept of pendent jurisdiction. Gautreau, the only case from this Circuit since Gibbs limiting pendent jurisdiction to claims between a single plaintiff and a single defendant, mentioned Gibbs briefly, but continued to use the old *Hurn* "cause of action" terminology, and did not treat Gibbs as affecting at all the single

plaintiff-single defendant rule. *Gautreau,* supra, at p. 616. Decisions from at least one other Circuit rendered *after* the Gibbs decision have upheld pendent jurisdiction where the state and federal claims were by different plaintiffs against the same defendant.[16] A recent, well-reasoned note in the Harvard Law Review advocates, under the heading "Pendent Parties", the assumption of jurisdiction over pendent state claims by different plaintiffs against different defendants where the claims arise out of the same basic nucleus of operative fact, as defined by Gibbs.[17] Observing that no case has yet applied such reasoning to different defendants since Gibbs was decided four years ago, the Note discusses Newman v. Freeman, supra, in which separate plaintiffs, a minor and his parents, claiming different elements of damages, sued a single defendant to recover for injuries to the minor arising from a single factual occurrence. The Court in *Newman* held that in spite of the multiple plaintiffs, it had pendent jurisdiction of the state claim. The *Newman* case is identical to our case with respect to the plaintiffs, i. e., minor and parent suing upon a single factual occurrence. The problem in the instant case is that we have two defendants as well as two plaintiffs. We recognize that if pendent jurisdiction allows joinder of a new plaintiff's claim, an argument might be made for joinder of a related claim against a second defendant arising out of the same nucleus of operative fact, particularly in view of the liberal joinder policy of the federal rules, not to mention Federal Rule 14(a) which allows a defendant to implead a third-party defendant who may be liable to defendant for all or part of plaintiff's claim without any independent jurisdictional basis over the third-party defend-

14. See cases cited at 5 A.L.R.3d 1072.

15. New Orleans Public Belt Railroad Co. v. Wallace, 173 F.2d 145 (5 Cir. 1949); Gautreau v. Central Gulf S. S. Corp., 255 F.Supp. 615 (E.D.La.1966).

16. Wilson v. American Chain & Cable Co., 364 F.2d 558 (3· Cir. 1966); American

Foresight of Philadelphia, Inc. v. Fine Arts Sterling Silver, Inc., 268 F.Supp. 656 (E.D.Pa.1967); Newman v. Freeman, 262 F.Supp. 106 (E.D.Pa.1966).

17. Note, "Pendent Jurisdiction", 81 Harv. L.Rev. 659 at 663 (1968).

ant. A further argument for exercising jurisdiction over ACE in this case might be made that plaintiffs could sue ACE in the state courts of Mississippi if this federal suit were dismissed, and since the same Mississippi law would apply in federal court as state court, there would be little, if any, inconvenience to ACE by defending its suit here instead of in state court. It is also important to note that TVA has expressed a strong desire to defend its part of the case in federal rather than state court. Thus, if we dismissed the case here and plaintiffs brought it in state court, TVA would doubtless attempt to remove its part of the case to this court with ACE resisting. If that happened, the anomalous result might be two separate lawsuits, one in state court and one in federal, based on a single accident, which would be costly in time and money to the litigants, to the state court and to this court. Such duplication of function and effort was one of the chief evils which certain Federal Rules, like Rule 14 (Third Party Practice), Rule 20 (Permissive Joinder), and Rule 13(a) (Compulsory Counterclaim), sought to abolish. This is not to say, however, that a federal district court is in any way bound to exercise jurisdiction over all pendent claims against separate defendants. In the absence of convenience and economy to the courts and the parties, the federal court has broad discretion to dismiss the pendent state claims under the rule laid down in *Gibbs*.

As we interpret the *Gibbs* opinion, the application of the pendent jurisdiction concept is largely within the sound discretion of the district court. It is possible that in some cases involving multiple defendants, the basic legal issues of the case might arise out of the application and construction of federal substantive law, and the state law issues might be truly "pendent", i. e., subordinate, secondary and supplemental to dominant and paramount legal issues of the lawsuit arising under federal substantive law. In such a case the assumption of federal jurisdiction of the entire lawsuit might be advised. This court is not convinced, however, that federal district courts should automatically hear all cases in which federal law is remotely, if at all, involved. Such a rule could bring into federal court many litigants whose connection with substantive claims under federal law would be of the most strained and tenuous character. Such a rule would convert the federal district court from a court of limited jurisdiction, carefully defined by Congress, to a court of general jurisdiction hearing many cases in which state law would predominate. Granted that convenience and expediency would be advanced by the adjudication of cases based predominantly upon federal law in federal court, it seems an abuse of discretion to subject multiple defendants, not otherwise suable, to suit in federal court in a "pendent jurisdiction" case wholly founded upon state substantive law.

In the case at bar several factors militate against the discretionary application of the pendent jurisdiction doctrine. First of all, the claims against both TVA and ACE are based solely on the substantive law of the State of Mississippi respecting the legal duties of one engaged in the business of distributing, dispensing and selling electric power; no federal rights or remedies are in question. Federal jurisdiction attaches to TVA solely because of its nature as a federal agency, and not because of the construction or application of any federal substantive law. No real prejudice will accrue to plaintiffs by trying their lawsuit in state court rather than federal. All of their claims are state law claims, and state law will be most properly construed and applied by a state court. In the absence of substantial convenience and economy, the logic of pendent jurisdiction must give way to historic limitations on expanding federal jurisdiction in the often troubled area of federal-state comity.

Having determined that this case involves primarily the construction and application of state law rights and reme-

dies, and it appearing that plaintiffs have a viable remedy in state court, this court does not feel that it can in good conscience apply the doctrine of pendent jurisdiction to hold ACE in this court as a party defendant, and its motion to dismiss is, therefore, granted.

An Order shall be entered accordingly.