**Pat EIDSCHUN and Darrel Ellis, as co-administrators of the Estate of Leo A. Eidschun, Deceased, Plaintiffs,**

v.

**Everett J. PIERCE et al., Defendants.**

**Civ. No. 3–886–W.**

United States District Court,
S. D. Iowa, W. D.

Dec. 20, 1971.

Robert J. Laubenthal, Frank W. Pechacek, Jr., and Herman W. Walter, Council Bluffs, Iowa, for plaintiffs.

Hugh P. Finerty and Addison C. Kistle, Council Bluffs, Iowa, for defendants.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

The Court has before it a Motion to Dismiss by defendants Everett James Pierce, Jerry L. Osler, Martin Boehme, Richard Riley, and David Doty and a Motion to Dismiss by defendant City of Council Bluffs, Iowa. Hearing was held on these matters on July 20, 1971.

Plaintiffs bring this action on behalf of the Estate of Leo A. Eidschun. Plaintiffs allege various causes of action against the individual defendants, who were police officers of the defendant City of Council Bluffs at the time of the death of plaintiffs' decedent, and against the defendant City of Council Bluffs. Each of the nine divisions of the Complaint charges some or all of the defendants with unlawfully causing injury and subsequent death to plaintiffs' decedent.

Division I of the Complaint alleges that the individual defendants jointly and severally violated the decedent's civil rights as defined by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States while acting under color of statutes, ordinances, regulations, customs and usages of the State of Iowa, the County of Pottawattamie, and the City of Council Bluffs. The City of Council Bluffs is not named as a defendant in Division I. The factual allegations are that on March 21, 1970, plaintiffs' decedent, Leo A. Eidschun, was arrested by police patrolman Jerry L. Osler (an individual defendant) and Everett James Pierce (an individual defendant), while acting within the scope of their employment with the City of Council Bluffs, at a place at or near 330 West Broadway in Council Bluffs, Iowa. After the arrest and while in the confines of the police station, the Complaint further alleges, defendant Everett James Pierce forcibly assaulted, beat and kicked plaintiffs' decedent, inflicting upon him personal injuries resulting in his death on March 22, 1970. Division I of the Complaint further alleges that while the assault and battery was being perpetrated, defendants Jerry L. Osler, Martin Boehme, Richard Riley and David Doty, all of whom were on-duty policemen for the City of Council Bluffs, watched the actions of defendant Everett James Pierce and failed to restrain his activity. The Complaint alleges that defendant Martin Boehme, the jailer on duty, also failed to prevent injury to prisoner Eidschun,

who was placed in his custody. Division I further alleges that none of the defendant police officers provided first aid or assistance or sought competent medical attention for prisoner Eidschun, even though it was obvious that Eidschun had sustained serious personal injuries. Plaintiffs allege that decedent's estate was damaged by the defendant police officers in the amount of $100,837.55 plus punitive damages and costs.

■ Plaintiffs state a cause of action under 42 U.S.C., Section 1983. The Court's jurisdiction is predicated upon 28 U.S.C., Section 1343(3).

Division II of the Complaint alleges that the individual defendants conspired together for the purpose of depriving, either directly or indirectly, plaintiffs' decedent of equal protection of the laws and of equal privileges and immunities under the law, as proscribed by 42 U.S. C., Section 1985. Plaintiffs characterize Division II as an action at Law brought for the benefit of the next of kin of the decedent, as provided in 42 U.S.C., Section 1986, inasmuch as the defendant police officers had the power to prevent or aid in the prevention of the assault, beating and kicking of plaintiffs' decedent and neglected or refused so to do. Plaintiffs pray in Division II for damages against the defendant policemen, jointly and severally, in the amount of $100,000 and $5,000 for the next of kin. The Court assumes this to mean that plaintiffs are suing for $100,000 damages to the estate under 42 U.S.C., Sections 1985 and 1986, and, in addition, for $5000 damages on behalf of next of kin under 42 U.S.C., Section 1986.

Division III alleges a cause of action against the City of Council Bluffs and Everett J. Pierce in tort. Plaintiffs base their right to sue the City of Council Bluffs upon Iowa Code, Chapter 613A, entitled "Tort Liability of Governmental Subdivisions." Suit against defendant Everett J. Pierce in this division is predicated upon the defendant's alleged beating of plaintiffs' decedent after decedent was arrested by the defendant and taken to the police station.

This beating is alleged to be the proximate cause of decedent's death. As against defendant City of Council Bluffs, plaintiffs allege that defendant Pierce was acting within the scope of his employment with the City of Council Bluffs as a police officer, thus subjecting the City of Council Bluffs to liability by reason of Iowa Code Section 613A.2. Plaintiffs further allege that the City of Council Bluffs violated its duty to keep the decedent from harm while he was in the Council Bluffs Police Station in the custody of the Council Bluffs Police Department. Plaintiffs pray for a judgment in the amount of $100,837.55 and costs against these defendants.

Divisions IV through VII of the Complaint allege tort actions against the City and each of the other four individual defendants. The individual defendant in Division IV is Jerry L. Osler; in Division V, Martin Boehme; in Division VI, David Doty; and, in Division VII, Richard Riley. The central allegation in each division is that the individual defendants saw Everett J. Pierce assault and beat the decedent, but failed to restrain the activity. The divisions allege that this constitutes a failure to protect a prisoner in the custody of the defendant police officers. The divisions further allege that the defendant police officers violated their duty to render or provide proper medical aid to the decedent while he was in their custody. In addition, Division V also alleges that Martin Boehme violated the duties to the decedent predicated upon the defendant's position as jailer. The City of Council Bluffs is named as defendant in each division pursuant to Iowa Code, Chapter 613A. Plaintiffs pray for judgment in each division in the amount of $100,837.55.

Division VIII names as defendant the City of Council Bluffs alone; suit is brought against the City pursuant to Iowa Code, Chapter 613A. This division alleges that the City breached many different duties to the decedent, all relating to either the employment of the five defendant police officers or the failure to protect the decedent from harm in the police station. Division VIII also prays for judgment in the amount of $100,837.55.

Division IX names all defendants and realleges all breaches of duty of all defendants previously alleged in Divisions III through VIII. Plaintiffs pray for judgment against all defendants, jointly and severally, in the amount of $100,837.55.

I

In their Motion to Dismiss, defendants Pierce, Osler, Boehme, Riley, and Doty contend that Divisions III through VIII and Division IX of plaintiffs' Complaint fail to contain a statement of the grounds upon which the subject matter jurisdiction of this Court depends. The defendants further contend that this Court has no subject matter jurisdiction over these causes of action as they relate to the individual defendants.

The Court does not have jurisdiction over these claims on grounds of either federal question, general or special, or diversity of citizenship. Where the Court does have subject matter jurisdiction based upon a federal question asserted in one claim, however, the Court has discretion under certain circumstances to hear other claims of the same plaintiffs against the same defendants properly joined under Federal Rule of Civil Procedure 18(a), even though such claims do not meet subject matter jurisdiction requirements independently. This discretion is based upon the judicially recognized doctrine of pendent jurisdiction. The Supreme Court of the United States articulated the standards federal courts must follow in exercising their discretion in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966). Essentially, two tests must be met in order for the Court to allow state claims (those which do not meet federal jurisdictional requirements independently) to be heard in federal court by reason of pendent jurisdiction.

First, the Court must ascertain whether the state and federal claims are derived from "common nucleus of operative fact" and "if, considered without regard to their federal or state character, . . . [plaintiff] would ordinarily be expected to try them all in one judicial proceeding. . . ."[1] In the instant case, the federal and state claims derive from the very same operative facts. It is also quite clear that should all of these claims have met federal jurisdictional requirements independently, this Court would have expected, indeed demanded under Federal Rule of Civil Procedure 42(a), that they be tried in one judicial proceeding. Thus, the Court has the *power* to hear the pendent claims against the individual defendants.

■■ The Court is not compelled to hear the pendent claims merely because it has the power to do so. *Gibbs* states that pendent jurisdiction is a doctrine of discretion, not of plaintiffs' right. Exercise of that discretion should be based upon considerations of judicial economy, convenience and fairness to the litigants. If these are not present, *Gibbs* admonishes that a federal court should hesitate to exercise jurisdiction over state claims, even though the court is bound to apply state law to them.[2]

■ The exercise of pendent jurisdiction over the state claims against the individual defendants in the instant case would constitute a substantial saving of judicial time and energy. To compel plaintiffs to bring their state claims against the individual defendants in state court would be to compel them to prove essentially the same facts pertaining to the issues of both liability and damages in two different trials. The issue of whether possibly some damages attributable to the federal causes of action preempt or preclude recovery of full damages in the state causes of action, and vice versa, would have to be faced by both courts, moreover. This would result in needless confusion and would senselessly hinder the resolution of plaintiffs' grievances. One focal point of concern in the *Gibbs* decision is whether the exercise of pendent jurisdiction would create the likelihood of jury confusion.[3] It appears to the Court that jury confusion would be much more likely to result should the causes of action against the individual defendants be tried in two different courts.

■■ Even though judicial economy would result from hearing the pendent claims, the Court must also examine the issues of convenience and fairness to the parties. Both the state and federal forums in this case are equally convenient to the parties, as both courts are located in Council Bluffs, Iowa. In hearing the state claims against individual defendants, moreover, the Court will not be venturing forth into uncharted regions of state law. Tort law as it relates to personal injuries and wrongful death is quite well developed in Iowa. Furthermore, plaintiffs' complaint does not reflect a substantial hegemony of state law claims against the individual defendants, another situation in which *Gibbs* suggests that a federal court refuse to exercise its discretion to hear pendent claims.[4] Plaintiffs pray for the same amounts of actual damages in both their federal and state claims against the individual defendants. This might well be a case where the Court would allow only one award of damages to assure against multiple recovery for the same injury. Indeed, when viewed in the light of the possible recovery of damages, the federal claims predominate, for only in the federal claims are punitive damages prayed for. In viewing the issues of liability raised by the federal

---

1. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

2. *Id.* at 726, 86 S.Ct. 1130, 16 L.Ed.2d 218.

3. *Id.* at 727, 86 S.Ct. 1130, 16 L.Ed.2d 218.

4. *Id.*

and state claims against the individual defendants, moreover, the Court cannot say that the state claims substantially predominate over the federal claims. There appears to be as much substance to the federal claims as there is to the state claims. The Court can see little danger that the defendants will be forced to litigate essentially a state case in federal court. Thus, the Court concludes that the exercise of pendent jurisdiction over the state claims against the individual defendants would be convenient and fair to the parties.[5]

## II

Defendant City of Council Bluffs' Motion to Dismiss for reason of lack of jurisdictional statement and lack of subject matter jurisdiction presents a much more difficult problem for the Court. Not only is there no diversity of citizenship between plaintiffs and the City and no federal question raised against the City in Divisions III through IX of plaintiffs' Complaint, but also the City is not properly a party to this case before the Court at all unless by reason of pendent jurisdiction.

■ Patrum v. City of Greensburg, Kentucky, 419 F.2d 1300 (6th Cir.1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1125, 25 L.Ed.2d 398 (1970), is the only case this Court could find in which the problem faced was totally apposite to the instant problem. That case involved an *action against a policeman, the mayor,* and the City to recover under the Civil Rights Act for an illegal arrest and beating by the policeman. The district court dismissed the action as against the mayor and the City. The Court of Appeals for the Sixth Circuit considered the propriety of the district court's or-der of dismissal in favor of the City. It held that under the doctrine of pendent jurisdiction as articulated by *Gibbs* the resolution of whether to retain the City in the litigation was a matter within the discretion of the district court. It further held that the district court properly exercised its discretion in refusing to invoke the doctrine of pendent jurisdiction. On the basis of the *Patrum* decision, this Court concludes that it does have the power under the *Gibbs* articulation of the doctrine of pendent jurisdiction to entertain the state claims against the City of Council Bluffs in the instant case. *Patrum* is of little help to the Court, however, in determining the matter of how the Court should exercise its discretion, for that case is devoid of any reasoning as to why it was proper in that case for the district court to decide not to hear the state claim.

*Only recently have federal courts begun to allow the addition of new parties* to cases because of pendent jurisdiction of state claims. The greater part of the case law on this point devotes itself to whether federal courts should exercise pendent jurisdiction when more than one plaintiff join in a case against one defendant where all claims are predicated upon a common nucleus of operative facts, and where the claim of at least one of the plaintiffs does not independently satisfy federal jurisdictional requirements. The cases resolving this question are split; the cleavage, basically, is *an historical one. Cases before the mid-sixties generally held that the state claim should not be heard.*[6] More recent cases have held that the state claims should be heard. The genesis of the recent movement is found in Raybould v. Mancini-Fattore Co., 186 F.Supp. 235 (E.D.Mich. 1960), and in a series of cases decided by

---

5. The Court finds support for this holding in Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir. 1970) which holds that a district court can properly hear a state claim for common law fraud by reason of pendent jurisdiction against a defendant over which the court properly has subject matter jurisdiction in an action based on securities law. The Court of Appeals for the Fifth Circuit has reached the same result as this Court in cases involving the Civil Rights Act. Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969); Anderson v. Nosser, 438 F.2d 183 (5th Cir. 1971).

6. *See, e. g.,* cases cited in Section 5 of Anno., 2 A.L.R.Fed. 855, 873–75 (1969).

federal courts in Pennsylvania.[7] The *Gibbs* decision, of course, has given the movement a great deal more impetus.[8] Although a few cases in recent years have held against the exercise of pendent jurisdiction, the clear trend in the past decade, and especially since *Gibbs*, is towards hearing state claims in federal courts in the situation where the claims of some plaintiffs meet federal jurisdictional requirements and the claims of other plaintiffs, although not meeting federal jurisdictional requirements independently, arise out of the same nucleus of operative fact.

There is a marked paucity of recent cases where the question raised is whether an additional defendant should be brought, by reason of pendent jurisdiction, into a case in federal court. Cases before *Gibbs* held almost without exception that additional parties could not be brought in under pendent state claims because of the lack of identity of parties.[9] This conclusion was usually justified by reference to Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), the case which *Gibbs* displaced as the leading authority on pendent jurisdiction. The Court has discovered only four reported decisions since *Gibbs* which touch upon the question of the propriety of bringing in additional defendants under the doctrine of pendent jurisdiction; one of these decisions, Patrum v. City of Greensburg, has been previously discussed.

Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3d Cir.1968), was a malpractice action under the New Jersey Death Act against a hospital and two physicians based on diversity of citizenship. The claims against the two physicians exceeded the jurisdictional amount; there was a statutory limitation of $10,000, however, on the amount which could be recovered from the hospital. The Court of Appeals for the Third Circuit held that the hospital could be sued in federal court by reason of the doctrine of pendent jurisdiction.

■ The Circuit Court found much comfort in that the jurisdictional defect in the claim against the hospital was only the jurisdictional amount requirement imposed by Congress and not the diversity of citizenship or federal question requirements imposed by the Constitution. This Court cannot accept this particular rationale used by the Third Circuit, that is, that the case for pendent jurisdiction is stronger when a jurisdictional requirement imposed by Congress is missing than when a jurisdictional requirement imposed by the Constitution is missing. Even though the Constitution is "higher" law than an act of Congress, both are higher law than any law that a federal court can declare. This Court thus concludes that the nature of the jurisdictional defect is not of significance to the decision of whether to employ the doctrine of pendent jurisdiction.[10]

This Court places much more weight on the reasoning given later in *Jacobson*. This reasoning follows the approach suggested in *Gibbs*.

In the present case, claims are asserted against different defendants, though the hospital and one physician are charged with the same neglect of duty. In each case, however, the coupled claims arise out of a single inju-

7. *E. g.*, Borror v. Sharon Steel Co., 327 F.2d 165 (3d Cir. 1964); Morris v. Gimble Bros., Inc., 246 F.Supp. 984 (E.D. Pa.1965).

8. *E. g.*, Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809, 817 (8th Cir. 1969); Stone v. Stone, 405 F.2d 94, 97 (4th Cir. 1968); Wilson v. American Chain & Cable Co., 364 F.2d 558, 564 (3d Cir. 1966); Newman v. Freeman, 262 F.Supp. 106, 107 (E.D.Pa.1966); Johns-

Mansville Sales Corp. v. Chicago Title & Trust Co., 261 F.Supp. 905, 907 (N.D. Ill.1966).

9. *See* cases cited in Section 10(b) of Anno., 5 A.L.R.3d 1040, 1071–72 (1966).

10. Indeed, the jurisdictional defect in the state claim in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), was lack of diversity of citizenship or federal question as required by the Constitution.

ry sustained by a particular person. And in the present case, the defendant hospital and at least one of the defendant physicians it had authorized to attend a patient it had accepted, were closely associated in the venture which caused the harm in suit. Moreover, most of the operative facts are common to the coupled claims, and in normal and most convenient and expeditious practice and procedure these claims would be tried together in a single lawsuit. In such circumstances, it seems reasonable and proper to view the lawsuit as a single "action" within diversity jurisdiction without requiring that each claim exhibits all of the jurisdictional requirements.

It should be added that in the present case no apparent disadvantage would be imposed upon the hospital, located in Atlantic City, by having the claim against it tried in a New Jersey federal court together with the claims against the doctors. Indeed, such procedure may well aid in the equitable determination and allocation of responsibility, if any, for the fatal mishap. At the same time, the evidence relevant to the claim against the hospital but not relevant to the claims against the physicians is not likely to be of such kind or extent as to confuse the litigation or add substantially to the trial court's burden.[11]

Shannon v. United States, 417 F.2d 256 (5th Cir.1969), is another case where a circuit court has passed on the question of bringing in an additional defendant under the doctrine of pendent jurisdiction. There an alleged widow of a deceased soldier was suing the Government and an insurance company for insurance proceeds. After holding that there was federal jurisdiction over the Government and that there was a possible claim against the Government, the Court of Appeals for the Fifth Circuit held that the trial court had discretion to hear the claim against the insurance company, a claim in which there existed no independent federal jurisdictional grounds. This, the circuit court concluded, would be so even if the trial court concluded that the plaintiff could not prevail against the Government. The circuit court reasoned that the facts of the case were within the criteria established by *Gibbs*. Especially convincing to the court was the fact that unless both claims were heard in federal court, plaintiff would be forced to bounce back and forth from federal to state court and would be forced to take disparate positions, each position being predicated upon which court the plaintiff found herself in at the time. The circuit court concluded that the only logical way that plaintiff could be relieved of this predicament would be for the federal court to hear all claims.

The Court has also discovered one reported district court opinion dealing with the instant issue. Latch v. Tennessee Valley Authority, 312 F.Supp. 1069 (N.D.Miss.1970), was a wrongful death action by Mississippi citizens against the TVA and a Mississippi electric power association. The court had jurisdiction over the claim against the TVA under 28 U.S.C., Section 1349, because the United States owned more than half of the capital stock of TVA. The District Court for the Northern District of Mississippi, however, chose not to hear the pendent state claim against the local electric power association. The court concluded that it did have the power under *Gibbs* to hear the state claim, in that both claims derived from a common nucleus of operative fact and they were such that the plaintiffs would ordinarily be expected to try them all in one judicial proceeding. Realizing the strong likelihood that failure of the federal court to entertain the state claim would force the plaintiff to litigate two separate lawsuits—one in federal and one in state court, and recognizing the strong federal policy against such a duplication

11. Jacobson v. Atlantic City Hospital, 392 F.2d 149, 154 (3d Cir. 1968).

of function and effort, the court, nevertheless, concluded that other factors dictated against hearing the state claim:

> In the case at bar several factors militate against the discretionary application of the pendent jurisdiction doctrine. First of all, the claims against both TVA and ACE are based solely on the substantive law of the State of Mississippi respecting the legal duties of one engaged in the business of distributing, dispensing and selling electric power; no federal rights or remedies are in question. Federal jurisdiction attaches to TVA solely because of its nature as a federal agency, and not because of the construction or application of any federal substantive law. No real prejudice will accrue to plaintiffs by trying their lawsuit in state court rather than federal. All of their claims are state law claims, and state law will be most properly construed and applied by a state court. In the absence of substantial convenience and economy, the logic of pendent jurisdiction must give way to historic limitations on expanding federal jurisdiction in the often troubled area of federal-state comity.

Having determined that this case involves primarily the construction and application of state law rights and remedies, and it appearing that plaintiffs have a viable remedy in state court, this court does not feel that it can in good conscience apply the doctrine of pendent jurisdiction to hold ACE in this court as a party defendant. . . .[12]

The court in *Latch,* while recognizing the cases allowing additional plaintiffs in under the doctrine of pendent jurisdiction, was somewhat troubled over bringing in new defendants under the doctrine. An examination of the case law, made earlier in this opinion, verifies that many other courts are troubled with the same problem; while there are many reported decisions which have allowed the entry of additional plaintiffs, there are very few which have allowed the addition of new defendants under the doctrine of pendent jurisdiction. This Court can see no meaningful distinction between the two situations. In either case a plaintiff is being convenienced and a defendant is being inconvenienced; the critical question in either case is how much is the defendant being inconvenienced. Courts must then use the standards articulated in *Gibbs* to determine whether other factors override any inconvenience to the defendant.

The four cases, discussed above, involving the question of bringing in additional defendants under the doctrine of pendent jurisdiction all agree that a federal court has the power by reason of the *Gibbs* decision to hear such pendent claims. The cases split over whether the district court should exercise its discretion to hear the pendent claim, each case following the *Gibbs* standards, and each case being decided upon its own unique facts. The Court can find no case decided after *Gibbs* and meeting the *Gibbs* power criteria which says a federal court does not have the power and discretion to hear a pendent claim against an additional defendant. Thus, this Court concludes that the question in the instant case of whether the claims against the City of Council Bluffs may be properly entertained in this Court must turn upon whether the facts of this case fall within the standards for proper use of the doctrine of pendent jurisdiction articulated in *Gibbs*.

This Court does have the power to hear the state claims against the City of Council Bluffs. In this case the federal claims against the City derive from the very same nucleus of operative fact. And, should all of these claims have met federal jurisdictional requirements independently, this Court would have ordered under Federal Rule of Civil Procedure 42(a) that they be tried in one judicial proceeding.

12. Latch v. Tennessee Valley Authority, 312 F.Supp. 1069, 1076–1077 (N.D.Miss.1970).

Having satisfied itself that it has the power to hear the state claims against the City, the Court must decide, based on considerations of judicial economy, convenience and fairness to the litigants, whether it should exercise its discretion to hear the pendent claims.

Hearing the state claims against the City in this Court would constitute a substantial savings of judicial time and energy. The plaintiffs must prove essentially the same facts pertaining to the issues of both liability and damages in order to prevail against the individuals on the federal claims and against the City on the state claims. Compelling two different trial courts to hear the same factual proofs would be totally wasting one trial court's valuable time and energy. The state claims against the City will cause this Court to spend more effort in properly instructing the jury. The Court, however, does not anticipate any great jury confusion over these additional instructions. And even if general instructions about the various claims might confuse the jury, the Court can always utilize special interrogatories. Special interrogatories are explicitly recognized in *Gibbs* as a sufficient remedy to any possible jury confusion. In final analysis, the Court concludes that any additional time and energy it might have to expend on additional jury instructions would be substantially less than that time and energy a state trial court would have to expend in trying a complete case involving very nearly the same proofs being urged in this Court.

In nearly all situations in which pendent jurisdiction is urged, the plaintiff would be convenienced if the federal court heard the state claim and the defendant would be inconvenienced. Federal courts, in determining whether to employ the doctrine of pendent jurisdiction, then must decide whether the convenience to the plaintiff outweighs any inconvenience to the defendant. It is beyond question that it would be greatly convenient to the plaintiffs for this Court to hear the state claims against the City of Council Bluffs along with the federal claims against the individual police officers. Such action by this Court would obviate plaintiffs from having to offer nearly the same proofs in two different trials. Thus, the critical problem here is the inconvenience the City of Council Bluffs might suffer from having to defend the state claims against it in federal court. At this date, the plaintiffs still have ample time to file their state claims against the City of Council Bluffs in Iowa District Court.[13] Proper venue for an action in state district court on these claims lies in Pottawattamie County, the county seat of which is Council Bluffs, Iowa.[14] This Court will also hear this case in Council Bluffs, Iowa. The City of Council Bluffs will have to defend the very same case in either federal or state court. The City is compelled to defend this case in this court, moreover, whether there is an action brought against it on the state claims in state court or not.[15] Thus, the only inconvenience the City of Council Bluffs would suffer by having to defend the claims against it in federal court would be that of having to go to one geographic point rather than another in Council Bluffs, Iowa; this must be deemed no inconvenience whatsoever.

13. Iowa Code Section 613A.5.

14. Iowa Code, Chapter 616. There is a real possibility that plaintiff would be successful on a motion for change of venue in state court. Iowa Rule of Civil Procedure 167. If this motion were granted, federal court in Council Bluffs would be a more convenient forum for the defendant.

15. Section 613A.8 provides in part:
"The governing body shall defend any of its officers and employees, whether elected or appointed . . . against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty."

The most difficult factor in this case is that of fairness to the parties; of course, this means fairness to the defendant, for the plaintiffs are urging that the entire case be heard in this Court. In general, the central issue here is comity between the federal and state governments; specifically the issue concerns the judicially established doctrine of abstention. Chapter 613A of the Code of Iowa, the provisions of which are the basis of the claims against the City of Council Bluffs, is a relatively recent enactment of the Iowa Legislature.[16] There is very little case law interpreting this Chapter.[17] In the usual case, therefore, it would be incumbent upon the federal court to abstain from deciding issues of law concerning such a relatively uninterpreted statute, if at all possible.[18] In this instance, however, this Court finds ample guidance in the existing case law of Iowa.

Iowa Code Section 613A.2 provides: "Except as otherwise provided in this Chapter, every municipality is subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." Section 613A.4 sets out the exceptions, none of which apply to this instant action.[19] Section 613A.4 also explicitly deals with the problem of whether suit against the municipality precludes other suits against its officers in their individual capacities; it states that the remedy against the municipality "shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the officer or employee whose act or omission gave rise to the claim, or his estate." "Exclusive of" means not taking into account or excluding from consideration.[20]

Section 613A.1(3) defines "tort" as "every civil wrong which results in wrongful death or injury to person or injury to property and includes but is not restricted to actions based upon negligence, breach of duty, and nuisance." Although the case law on Chapter 613A is meager, the term "tort" already has been interpreted to include assault and unlawful arrest and detention perpetrated by a police officer of a municipality. Strong v. Town of Lansing, 179 N.W.2d 365, 367 (Iowa 1970). Thus, the causes of action to which the City of Council Bluffs is defendant in the instant case would fall within the meaning of "tort" found in Section 613A.1(3). There is no indication that Chapter 613A sets out a new and different type of tort action; rather, there is every indication that normal tort rules and standards apply. Tort law as it re-

---

16. 1967 Iowa Acts (62 G.A.), ch. 405, effective July 27, 1967.

17. *See* Iowa Code Annotated, Chapter 613A.

18. Department of Social Services of Iowa v. Dimery, 398 U.S. 322, 90 S.Ct. 1871, 26 L.Ed.2d 265 (1970); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed. 2d 68 (1970).

19. The claims exempted are:
　　1. Any claim by an employee of the municipality which is covered by the Iowa workmen's compensation law.
　　2. Any claim in connection with the assessment or collection of taxes.
　　3. Any claim based upon an act or omission of an officer or employee, ex-

ercising due care, in the execution of a statute, ordinance, or officially adopted resolution, rule, or regulation of a governing body.
　　4. Any claim against a municipality as to which the municipality is immune from liability by the provisions of any other statute or where the action based upon such claim has been barred or abated by operation of statute or rule of civil procedure.

20. 15A Words & Phrases Evidence (Supp.), quoting from Foster v. Motor Vehicle Acc. Indem. Corp., 36 Misc.2d 598, 232 N.Y.S.2d 740, 742 (Sup.Ct. Rockland Co., 1962).

lates to personal injuries and wrongful death is quite well developed in Iowa. Thus, the Court can think of no convincing reason why it should abstain from hearing the state claims against the City of Council Bluffs predicated upon Iowa Code, Chapter 613A.

Finally, the Court turns to the last point of inquiry suggested in *Gibbs*, whether plaintiffs' complaint reflects a substantial hegemony of state claims. The Court concludes that the federal claims stated in the complaint are as equally substantial as or more substantial than the state claims against the City for essentially the reasons stated in Division I of this Memorandum.

## III

The motions to dismiss of both the individual defendants and the defendant City raise the additional ground that the state claims stated in the complaint lack a jurisdictional statement as required by Federal Rule of Civil Procedure 8(a). The Court already has satisfied itself that it has subject matter jurisdiction over all of the state claims by reason of pendent jurisdiction. This conclusion is based on facts alleged in the complaint. If facts giving the Court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not specifically be pleaded.[21] Were this a defect, moreover, it could easily be corrected by amending the complaint. It certainly is not grounds for dismissing the state claims.

Accordingly, it is hereby ordered that the Motion to Dismiss of defendants Everett J. Pierce, Jerry L. Osler, Martin Boehme, Richard Riley, and David Doty and the Motion to Dismiss of the City of Council Bluffs, Iowa be and the same hereby are overruled and denied.

---

21. Williams v. United States, 405 F.2d 951, 954 (9th Cir. 1969); Schwarz v. United States, 191 F.2d 618 (4th Cir. 1951). *See* Ivey v. Frost, 346 F.2d 115 (8th Cir. 1965); Vorachek v. United States, 337 F.2d 797 (8th Cir. 1964).