Juan A. **GONZALEZ**, Administrator on behalf of the Estate of Efrain Gonzales, Deceased, Plaintiff-Appellant,

v.

John **DOE**, Officer of the Hartford Police Force, et al., Defendants-Appellees.

No. 318, Docket 72–1508.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1972.

Decided March 15, 1973.

Mitchell Pearlman, Hartford, Conn. (Bruce C. Mayor, David Pels, Hartford, Conn., on the brief), for plaintiff-appellant.

Jerome T. Malliet, Hartford, Conn. (Richard M. Cosgrove, Deputy Corp. Counsel, Hartford, Conn., of counsel), for defendants-appellees.

Before LUMBARD, SMITH and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Juan A. Gonzalez, administrator of the estate of his deceased brother Efrain, brought an action in the United States District Court for the District of Connecticut seeking damages against a then unknown Hartford police officer, other named supervisory police officials of the City of Hartford, the former City Manager, and the City itself, for the alleged homicide of Efrain and the deprivation of his civil rights in violation of 42 U.S.C. § 1983.[1]  The police officer, originally designated John Doe, is now claimed to be Thomas Ganley.[2]

The district court, acting upon a motion filed by the City alone, dismissed the claims against the City,[3] holding in reliance upon Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that the City is not a "person" within the meaning of 42 U.S.C. § 1983 and that it therefore may not be sued thereunder. Plaintiff urged retention of pendent jurisdiction over the City, even if it were held not liable to suit under § 1983, because Conn.Gen. Stats. § 7–465 (1972)[4] might obligate it

1. 42 U.S.C. § 1983 provides:
"*Civil action for deprivation of rights*
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Though the district court record before us does not so indicate, plaintiff, after the notice of this appeal was filed, was apparently granted leave to amend his complaint to substitute the name of Thomas Ganley for that of John Doe, as well as to name one Jesse Campbell as one of those not then known to plaintiff who was alleged, in plaintiff's Eighth Cause of Action, to have conspired to conceal Ganley's identity to deprive plaintiff of his right to damages under § 1983. The City of Hartford states that, following the filing of the substituted complaint, it has now filed an appearance on behalf

of defendants Ganley and Campbell in addition to its representation of the other named defendants from the outset of this action. Appellees' Brief 11. We, therefore, refer to Ganley by name hereafter.

3. The district court's ruling is not officially reported. Gonzalez v. Doe, Civil No. 14,-383 (D.Conn.Dec. 1, 1971).

4. Section 7–465 provides in relevant part:
"*Assumption of liability for damage caused by employees*
"Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton

to pay on behalf of the defendant City officials any sums for which they might be held liable as a result of this proceeding. Applying the standards set forth in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), however, the court also declined to exercise pendent jurisdiction over state law claims against the City.

On motion of the plaintiff under Rule 54(b), F.R.Civ.P., Judge Clarie determined that there was no just reason for delay and directed entry of a final judgment dismissing the claims against the City.[5] Accordingly, the appeal is properly before us. See Farrell v. Piedmont Aviation, Inc., 411 F.2d 812, 814–815 (2d Cir.), cert. denied, 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969); 6 Moore, Federal Practice ¶ 54.45 [2–2] (2d ed. 1971). We affirm the dismissal of both the § 1983 and pendent claims against the City.

The case arises out of the shotgun slaying of Efrain Gonzalez in Hartford during a period of civil strife in that City in July, 1970. Defendant police officers were on duty at the time in an attempt to quell the disturbances. Plaintiff claims that his brother was shot without provocation by Officer Ganley who then left the scene with other police officers, none of whom attempted to render any assistance to the fatally wounded victim.

The complaint designates eight separate claims or causes of action. The first three seek compensatory and punitive damages under § 1983 against Officer Ganley for the slaying of Efrain Gonzalez, either wilfully and wantonly or through the negligent use of excessive force. The Fourth and Fifth Claims are jointly and severally directed against the other defendant municipal employees, seeking the same relief under § 1983 for negligent failure to supervise and prevent in various respects the use of deadly force by the police in the control of civil disturbances, which allegedly resulted in the shotgun death of Efrain Gonzalez. The Eighth Claim seeks the same relief from Ganley and the other individual defendants for an alleged

act of such employee in the discharge of such duty. . . . Any employee of such municipality, although excused from official duty at the time, for the purposes of this action shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law. . . . Governmental immunity shall not be a defense in any action brought under this section. In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any verdict rendered in such action against such employee. No mention of any kind shall be made of such statement by any counsel during the trial of such action."

5. The judgment entered February 29, 1972, ordered that "the plaintiff's sixth and seventh causes of action [be dismissed] for failure to state a claim for which there is federal jurisdiction, and that the Court declines to exercise pendent jurisdiction, against the City of Hartford."

Though entered pursuant to a motion by the plaintiff, it was expressly based upon the court's ruling, *supra* note 3, granting the "Motion To Dismiss Complaint As Against The Defendant, City of Hartford," for failure to state a claim upon which relief can be granted. That ruling stated in pertinent part:

"The plaintiffs may· proceed in this Court against the municipal employees under § 1983. State law damages for wrongful death and the claimed statutory indemnification of the defendant municipal employees, both as to state and federal judgments should be pursued in the state courts."

Despite the fact that the Sixth Cause of Action (the state wrongful death claim) is itself directed only against the municipal employees, under the complaint and the circumstances of the proceedings in this action thus far, we assume that the district court declined to exercise pendent jurisdiction only as to the City of Hartford. Accordingly, we restrict our review to the questions thus raised and express no view as to whether it would have been proper for the district court to have declined to exercise pendent jurisdiction as to the defendant City officials on the state wrongful death claims.

conspiracy to conceal Ganley's identity and thereby prevent the enforcement of plaintiff's right to damages under § 1983.

Upon this appeal we are concerned only with the dismissal of the Sixth and Seventh Claims as against the defendant City of Hartford. The Sixth Claim was brought under Connecticut's wrongful death statute[6] and seeks "pecuniary damages" jointly and severally against the individual defendants. The Seventh Claim, which incorporates the § 1983 and wrongful death allegations contained in the first six claims, and further alleges that at all material times the defendant City officials were acting within the scope of their employment, is directed against the City of Hartford and asks compensatory damages and costs only.

## I.

In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court canvassed the legislative history of Section 1 of the Ku Klux Act of April 20, 1871, now codified as 42 U. S.C. § 1983, and noted that a proposal (suggested by Senator Sherman) to add a separate section to the Act providing for municipal liability in damages was rejected amidst vigorous debate over the question of Congress' constitutional power to impose civil liability on the municipal corporations of the states. The Court concluded that "[t]he response of the Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by the Act of April 20, 1871, was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include them." Id. at 191, 81 S.Ct. at 486. Absent any judicial or legislative modification, the effect of this landmark decision is to preclude suit against a municipality based on § 1983.

Appellant seeks to avoid the breadth of Monroe by urging that where a state has, through a law such as Conn.Gen.Stats. § 7–465,[7] voluntarily imposed on its municipalities an obligation to pay certain damages for which one or more of its employees has been held liable and has removed from them the defense of governmental immunity, no question of federal deference to local immunity is involved and a claim for damages under § 1983 should therefore be permitted against the municipality. The correctness of this view is said to be buttressed by the existence of 42 U.S.C. § 1988[8] which has been read to mean

---

6. Conn.Gen.Stats. § 52–555 (1973 Supp.) provides:

"*Actions for injuries resulting in death*

"In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

7. See note 4 *supra*.

8. Section 1988 states, in pertinent part:

"The jurisdiction in civil  .  .  . matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.  .  .  . "

that "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal [civil rights] statutes [described in § 1983]," Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969) (action under 42 U.S.C. § 1982). Appellant further argues that Monroe v. Pape has been eroded by decisions granting equitable relief against municipal corporations under § 1983 and by the absence of any indication in that statute's legislative history of Congressional hostility toward the imposition of municipal liability where such liability is imposed by state law. In short, we are asked to draw the "inference that Congress intended municipalities to be liable under the Civil Rights Act to the extent that they are liable under state law." This we decline to do.

In construing the word "person" as used in § 1983, the Supreme Court did not base its decision upon policy considerations but upon the clearly defined intent of Congress as evidenced by the legislative history of that statute. 365 U.S. at 191, 81 S.Ct. 473. The 42nd Congress, voicing sharp hostility to subjecting municipalities to liability for damages based upon violation of civil rights, made it clear that the term "person" was not to include a municipality. Whatever may be our views as to the wisdom of subjecting municipalities to liability when the parent state has adopted a legislative amendment, we cannot now expand that meaning by attributing to Congress policy considerations which it never entertained. To say that the 42nd Congress, if it had pondered further upon the matter, might have concluded that § 1983 should reach a situation where a state itself imposes liability upon its municipalities for acts of their employees is to rewrite history. There is no evidence that it ever contemplated such a possibility. But there is strong evidence to the contrary, which led the Supreme Court in *Monroe* to conclude that since a municipality is not a "person" it may not be held liable in

damages for deprivation of rights protected by § 1983. The word "person" as used in the statute has the same meaning now as it had then. As the Seventh Circuit recognized in dealing with the same issue in Ries v. Lynskey, 452 F.2d 172, 175 (7th Cir. 1971), the question is

"[N]ot whether the Congress in 1871 would have included a municipality within the definition of 'person' if at the time municipalities generally had not had immunity under the common law of states but rather the test is what Congress meant to do at that time irrespective of the reasons leading to that action. What Congress meant to do, it seems clear from the exposition in *Monroe*, was to legislate that 'person' did not include a municipality."

We are aware that in Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358, 368–369 (1971), reversed on other grounds sub nom. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (Jan. 10, 1973), the District of Columbia Court of Appeals adopted the view, here advocated by appellant, that municipalities may be held liable in damages under § 1983 to the extent that they are liable under state law. But we find ourselves in accord with the contrary views expressed in Yumich v. Cotter, 452 F.2d 59 (7th Cir. 1971), cert. denied, 410 U.S. 908, 93 S.Ct. 955, 35 L.Ed.2d 269 (1973), which rejected the reasoning of Carter v. Carlson, *supra*, stating:

"With all respect, however, we read *Monroe* as a binding statutory construction, not dependent upon state law immunity, and not related to a deficiency in federal remedies, but establishing that § 1983 does not impose liability for damages upon a city." *Id*. 452 F.2d at 61.

The same position has been adopted by other courts which have considered the issue in this light, see Moor v. Madigan, 458 F.2d 1217, 1218–1220 (9th Cir. 1972); Wilcher v. Gain, 311 F.Supp. 754 (N.D.Cal.1970); see also Patrum v. City

of Greensburg, 419 F.2d 1300 (6th Cir. 1969), cert. denied, 397 U.S. 990, 90 S. Ct. 1125, 25 L.Ed.2d 398 (1970).

■■ We find no warrant for a departure from the *Monroe* rule of municipal immunity from damages under § 1983 in the reasons pressed upon us by appellant. While § 1988 may allow use of state *remedies* in redressing deprivations under § 1983, at least where federal remedies are deficient, see Sullivan v. Little Hunting Park, Inc., *supra,* we are here confronted with the preliminary issue of whether liability exists at all under § 1983, not what remedy would be appropriate if liability should exist. Manifestly the nature of an appropriate remedy, which assumes the existence of liability, is irrelevant to the question of whether liability can attach in the first place. Furthermore, since state remedies available by virtue of § 1988 may not be "inconsistent with the . . . laws of the United States," and municipal liability for damages does not exist under § 1983, Monroe v. Pape, *supra,* such liability cannot be created by state legislation, whether or not it be labelled a legislative waiver of immunity. See Moor v. Madigan, *supra* 458 F.

2d at 1220. Federal liability can be created only by an affirmative act of Congress.[9]

In short, Congress intended municipalities not to be encompassed within the term "person" as used in § 1983, at least for the purpose of damage suits. The decision to change what it enacted should remain exclusively with Congress itself. In such a posture consideration of the wisdom of making municipalities liable to suit under § 1983[10] when the parent state has removed governmental immunity and imposed liability on them for damages assessed against their employees acting in the scope of municipal employment[11] would not be an appropriate course for us to pursue.

## II.

■ We turn to the issue of pendent jurisdiction over the state law claim of indemnification against the City under Conn.Gen.Stats. § 7–465, which is contingent upon a judgment ultimately being entered in favor of appellant against the City officials.[12] Judge Clarie declined to exercise such jurisdiction, and we think it was within his discretionary power to do so.

9. It is true that equitable relief has been granted under § 1983 against municipal corporations by some courts, see, e. g., Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961); Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir.), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); but see Zuckerman v. Appellate Division, 421 F.2d 625, 626 (2d Cir. 1970); Seergy v. Kings County Republican County Committee, 459 F.2d 308, 312–313 n. 6 (2d Cir. 1972). However, the legislative history relied upon by the Supreme Court in *Monroe* "focused primarily on damage actions against municipalities, and . . . should be read accordingly," Comment, Injunctive Relief Against Municipalities Under Section 1983, 119 U.Pa.L.Rev. 389, 397 (1970). We are persuaded that prohibitory, as opposed to mandatory, injunctions might consistently with that history be granted against municipalities under § 1983, id. at 400, and that whatever the ultimate resolution of the question of injunctive relief under § 1983, cf. Monroe v. Pape, *supra*

365 U.S. at 191 n. 50, 81 S.Ct. 473, Comment, *supra* at 392, 393 n. 25; Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 158 n. 9, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971), the immunity of municipalities from a § 1983 suit for damages, established in *Monroe,* remains viable and is not affected thereby.

10. Cf. Foote, Tort Remedies for Police Violations of Individual Rights, 39 Minn.L. Rev. 493, 514 (1955); Fuller & Casner, Municipal Tort Liability in Operation, 54 Harv.L.Rev. 437 (1941); Smith, Municipal Tort Liability, 48 Mich.L.Rev. 41, 50–51 (1949); Note, Grievance Response Mechanisms for Police Misconduct, 55 Va. L.Rev. 909, 925–27 (1969).

11. See Note, Carter v. Carlson: The Monroe Doctrine at Bay, 58 Va.L.Rev. 143, 159 (1972), implicitly suggesting the possibility that such a rule might lead to a statutory reimposition of municipal immunity in some states.

12. See notes 4 and 5 *supra.*

In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court considered the question whether a federal court, assuming it had the power to hear a state claim as pendent, should, after taking into account "considerations of judicial economy, convenience, and fairness to litigants," exercise that power, *id.* at 726, 86 S.Ct. at 1139, and observed:

> "That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.*

Applying these principles here, we find no abuse of discretion in the dismissal of the pendent claims against the City. See Patrum v. City of Greensburg, 419 F.2d 1300 (6th Cir. 1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1125, 25 L.Ed.2d 398 (1970). Appellant phrases the issue as "whether a state law claim against a public entity can be pendent to a § 1983 action against one or more of the entity's employees" and, answering in the affirmative, refers us to Eidschun v. Pierce, 335 F.Supp. 603 (S.D.Iowa 1971), where the court, after finding it had the power, chose to retain pendent claims against a city as § 1983 claims remained to be tried against municipal employees and the proof required to establish both sets of claims was essentially the same. In the present case, however, the district court struck a different balance in weighing the factors of economy, convenience, and fairness, and we do not find its conclusion to be unsound.

We may assume for the purpose of review that there was power in the district court to hear pendent state claims against the City even though federal claims survived only against the other defendants, cf. Leather's Best, Inc. v. Mormaclynx, 451 F.2d 800, 809–811 (2d Cir. 1971); Astor-Honor, Inc. v. Grosset & Dunlap, Inc., 441 F.2d 627 (2d Cir. 1971),[13] because we are convinced in any event that there were sound reasons for not retaining pendent jurisdiction over the City in this case as a matter of discretion. First, the City of Hartford notes in its brief that it "filed a statement with the Clerk of the District Court on June 8, 1971, that the municipality will pay any judgment entered in the action against named employees." Secondly, there is no reason to assume that, if necessary, the state courts would not grant full faith and credit to any judgment obtained against the municipal officials in the federal court. Thirdly, if the City should contest its obligation to pay any judgment rendered against its employees, the issues of whether they were "acting in the performance of [their] duties and within the scope of [their] employment" and whether the damage was "the result of any wilful or wanton act"[14] would likely be raised. Those issues concern the interpretation of a state statute and the Supreme Court reminded us in *Gibbs* that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139. Moreover, to the extent that the standards to be applied and the proof required to meet them in order to render the City liable under the state statute differ from the standards and proof required to render the individual defendants liable under § 1983, any jury which might be empanelled would be subject to confusion which it would be best to avoid. Finally, there is the possibility that a jury might be prejudiced against the other defendants on the primary claims if it knew from the claim against the City as a defendant that it might be obligated

---

13. And see Fortune, Pendent Jurisdiction— The Problem of "Pendenting Parties," 33 U.Pitt.L.Rev. 1 (1972); Note, 73 Colum. L.Rev. 153; Note, 81 Harv.L.Rev. 657, 662–64 (1968).

14. See note 4 *supra.*

as an indemnitor to pay for any judgment assessed.

Under these circumstances the district court was well within the bounds of allowable discretion in refusing to hear the state law claims against the City once the federal claim against it was dismissed before trial.

Affirmed.